CALCULATORS HAWAII, INC., Plaintiff-Appellee Cross-Appellant,

v.

BRANDT, INC. and Reynold M. Hallett, Defendants-Appellants Cross-Appellees.

Nos. 81–4508, 81–4549.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 18, 1982.

Decided Nov. 7, 1983.

---

Patrick Jaress, Mukai, Ichiki, Raffetto & MacMillan, Honolulu, Hawaii, for plaintiff-appellee cross-appellant.

Wayne E. Babler, Jr., Milwaukee, Wis., for defendants-appellants cross-appellees.

Before CANBY, NORRIS and REINHARDT, Circuit Judges.

NORRIS, Circuit Judge:

In this antitrust action, appellee and cross-appellant Calculators Hawaii, Inc. (Calculators) challenged an exclusive dealership arrangement between Brandt, Inc. and Reynold M. Hallett, appellants and cross-appellees. Pursuant to an agreement between Brandt and Hallett, Hallett sold, serviced, and repaired money-handling machines manufactured by Brandt. The arrangement between Brandt and Hallett allegedly prevented Calculators, an office equipment distributor, from obtaining Brandt equipment or repair parts. After a bench trial, the district court ruled that Brandt did not violate the Sherman Act by selling new equipment solely through Hallett, but that Brandt and Hallett's refusal to sell repair parts to Calculators violated both sections 1 and 2 of the Sherman Act. Each side appeals the judgment against it. We hold that the refusal to deal with Calculators did not violate the Sherman Act in any respect. Accordingly, we affirm the district court's decision in favor of Brandt, but reverse the decision in favor of Calculators.

## I. THE JURISDICTIONAL QUESTION

Calculators' cross-appeal raises a jurisdictional question, to which we turn first. Brandt contends that this court lacks jurisdiction to consider the merits of the cross-appeal because it was not timely filed. The sequence of events giving rise to the jurisdictional challenge is as follows: On April 9, 1981, the district court issued its decision and order finding Brandt liable for the refusal to sell parts, but not for the refusal to sell new machines. On July 11, 1981, Calculators filed a motion for modification of the decision, supporting its motion with a request to introduce additional evidence. Without having ruled on the July 11 motion, the court entered judgment on August 27, 1981. Then, on September 10, 1981, the court denied Calculators' motion. Brandt filed a notice of appeal on September 27, 1981. Calculators did not file its notice of cross-appeal until October 8, 1981, thirty-two days after entry of judgment and sixteen days after the filing of Brandt's appeal. The filing of the cross-appeal was therefore untimely under Fed.R.App.P.

4(a)(1) and (3) unless the July 11 motion brought Fed.R.App.P. 4(a)(4) into play. If Fed.R.App.P. 4(a)(4) applies, the time for appeal did not begin to run until the denial of the July 11 motion.

It is Calculators' position that the July 11 motion preserved its right to appeal. Whether Calculators is correct depends upon the answers to two questions: first, whether a motion filed before the entry of judgment can be timely; and, second, whether the subsequent entry of judgment should be deemed a denial of that motion. Unless the entry of judgment on August 27 may be deemed a denial of the July 11 motion, the motion was denied on September 10, and Calculators' appeal, filed on October 8, is timely.

■ The question we must first address is whether a motion filed before entry of judgment can be timely for purposes of Rule 4(a)(4). Calculators' motion was entitled a "motion for modification of decision." Its aim was to request that certain findings of fact be altered and Brandt's liability increased. The motion may therefore be analyzed under Fed.R.Civ.P. 52(b), which requires that motions to amend findings or make additional findings shall be made "not later than 10 days after entry of judgment . . . ." We agree with Professor Moore that the language of 52(b) suggests that "a motion made after the court has indicated the action that it will take but before entry of the judgment embodying that action is timely." 9 J. Moore, Moore's Federal Practice ¶ 204.12[4], at 4–84 (2d ed. 1983) (footnote omitted). We therefore hold that Calculators' motion was timely filed. Contrary to Brandt's assertion, this conclusion is not inconsistent with our decision in *Agostino v. Ellamar Packing Co., Inc.,* 191 F.2d 576 (9th Cir.1951). In that case we held that a motion to reconsider, filed before the entry of judgment but decided after the entry of judgment, did not extend the time for appeal. The court in *Agostino* based its decision in part on the fact that the nature of the motion filed before entry of judgment precluded the court from treating it as a motion to amend findings of fact. *See id.*

at 577. The court noted that if the motion could be so treated, the time for appeal would be extended. *Id. Agostino* thus does not reject, but in fact endorses our reading of Rule 52(b).

Nor does our holding in *Agostino* require us to deem the entry of judgment an implied denial of Calculators' pending motion. In *Agostino,* the court held that the motion for reconsideration "was nothing more than an argument on the law applicable to the case and every request made therein was in effect denied by the findings of fact, conclusions of law and judgment entered after the motion to reconsider was filed." *Id. Agostino* thus suggests that we must look to the judgment itself to see whether a denial of all pending motions was intended. This approach is consistent with holdings in other circuits that require reference to the implications of a judgment in order to ascertain its effect. *See Director of Revenue v. United States,* 392 F.2d 307 (10th Cir. 1968) (motion for rehearing treated as Rule 59(b) motion for new trial on issues resolved at initial stage of litigation; motion not implicitly denied by entry of judgment where district court formally considered and ruled on motion after entry of judgment); *United States v. Pan American World Airways Inc.,* 299 F.2d 74 (5th Cir.) (entry of judgment did not necessarily dispose of pending motion for new trial), *cert. denied,* 370 U.S. 918, 82 S.Ct. 1556, 8 L.Ed.2d 499 (1962), *reh. and cert. granted, rev'd on other grounds,* 382 U.S. 25, 86 S.Ct. 153, 15 L.Ed.2d 21 (1965).

■ In this case we do not read the entry of judgment and award of damages that followed Calculators' motion to amend the findings of fact as a rejection of Calculators' new contentions. The district court's consideration and denial of the motion on September 10 in light of newly proffered and admitted evidence belies Brandt's contention that the August 27 judgment impliedly denied the motion. We conclude that we have jurisdiction to consider the cross-appeal.

## II. THE SHERMAN ACT QUESTIONS

We turn now to the merits of Calculators' cross-appeal, which concerns the refusal to sell new Brandt money-handling machines through Calculators, and to Brandt's appeal, which concerns the refusal to sell repair parts to Calculators. The underlying facts may be summarized as follows.

Before 1976, Brandt sold its money-handling machines in Hawaii through Fisher-Hawaii, Inc., an office supply distributor. This arrangement was a deviation from Brandt's usual practice of doing business exclusively through its own agents. Until 1974, Fisher-Hawaii serviced and repaired Brandt machines in addition to selling them. In 1974, Fisher-Hawaii entered into an agreement with Calculators, providing that Calculators would take over the servicing and repairing of Brandt machines. Brandt thereafter sold some repair parts to Calculators and filled at least one order for new equipment at Calculators' request.

In 1976, Brandt engaged Reynold M. Hallett as its district manager for Hawaii and began selling its machines in Hawaii exclusively through him. Pursuant to Brandt's "standard written agreement" with its district managers, Brandt refused to sell either new equipment or repair parts to Calculators, and Hallett instructed owners of Brandt machines to deal exclusively with Hallett for maintenance and repair service. Calculators' inability to obtain Brandt machines or repair parts led to this action charging violations of sections 1 and 2 of

the Sherman Act. We will address the refusal to sell new equipment and the refusal to sell repair parts in turn.

### A. The Refusal to Sell New Equipment
### The Section 1 Claim

■ Calculators contends that Brandt's refusal to sell new equipment through Calculators unreasonably restrained competition in violation of section 1. The district court held that there could be no section 1 violation, because Brandt and Hallett were not sufficiently independent of each other to form a conspiracy. We agree. As this court recently stated, a section 1 conspiracy requires "an agreement among two or more persons or distinct business entities." *Reid Brothers Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1296 (9th Cir.1983). See also *Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd.*, 416 F.2d 71, 82–83 (9th Cir.1969), *cert. denied*, 396 U.S. 1062, 90 S.Ct. 752, 24 L.Ed.2d 755 (1970). The district court's finding that Hallett sold new Brandt machines as Brandt's agent is not clearly erroneous. See Fed.R.Civ.P. 52(a). Hallett never owned or even possessed the Brandt machines; he merely took orders for them, forwarded the orders to Brandt, and received a percentage commission on sales made in his territory. In sum, Hallett was Brandt's sales agent and, in that capacity, was incapable of conspiring with Brandt to restrain trade in the sale of new money-handling machines.[1]

---

1. Calculators does not really take issue with the district court's findings; rather, it lists additional proposed findings it submitted to the district court and complains that the court did not discuss each of them in its decision and order. As summarized in text, the district court did lay out the factual bases for its characterization of the relationship between Hallett and Brandt, and while the decision is not elaborate on that point, neither is it conclusory.

Therefore, Calculators does not persuade us that we should comply with its request to require the district court to reconsider its findings in light of *Simpson v. Union Oil Co.*, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964), or *Greenville Publishing Co. v. Daily Reflector, Inc.*, 496 F.2d 391 (4th Cir.1974). An agency agreement, like the coercive consignment agreement in *Simpson*, may amount to a "clev-

er manipulation of words," 377 U.S. at 22, 84 S.Ct. at 1057, where dealers are in reality independent businessmen with "all or most of the indicia of entrepreneurs," *id.* at 20, 84 S.Ct. at 1056. But here the district court did not find such indicia. The proposed findings that Calculators would have the district court measure against *Simpson, e.g.,* the fact that Hallett hired his own employees and the fact that Brandt did not claim to be doing business in Hawaii for tax purposes, even if true, do not persuade us that the district court was clearly erroneous.

Likewise, we do not find it necessary to require the district court to reconsider whether Hallett had an independent economic stake in the agreement under *Greenville Publishing Co. v. Daily Reflector, Inc., supra.* The alleged coconspirators in *Greenville Publishing Co.*

### The Section 2 Claim

In addition, Calculators alleged that Brandt monopolized sales of money-handling machines in violation of section 2 of the Sherman Act. The court held in favor of Brandt on this issue as well, on the ground that Calculators failed to establish Brandt's market share in sales of money-handling machines in Hawaii or nationwide. The court found that Calculators had introduced insufficient evidence to show monopoly power in any market, that Calculators had made no showing that Brandt attempted to use its market share unfairly, and that even if Calculators had standing to complain about Brandt's alleged monopolization, it had made no showing that other manufacturers of money-handling equipment were unable to compete effectively with Brandt. Although Calculators renews its section 2 claim on appeal, it fails to cite any evidence that is probative of Brandt's market share. We therefore affirm the judgment in favor of Brandt and Hallett with respect to all issues presented by the cross-appeal.

### B.   The Refusal to Sell Repair Parts
### The Section 1 Claim

The district court held that Brandt and Hallett's concerted refusal to sell repair parts to Calculators violated section 1 of the Sherman Act. Applying the rule of reason,[2] the court found that the refusal was borne of an anticompetitive purpose and produced an anticompetitive effect. Brandt and Hallett argue that the judgment must be reversed for failure of proof, and we agree.

Hallett's dealings in repair parts rendered his service and repair operation sufficiently different from the sales opera-

tion to persuade the district court that Hallett was not Brandt's agent for purposes of repairing Brandt equipment. Hallett purchased the parts from Brandt and set his own prices for service and repair. He was not required to account to Brandt for his income. The court concluded that, as an independent contractor in the repair business, Hallett could combine with Brandt in violation of section 1 by refusing to sell parts. That finding is amply supported by the record.

Calculators has failed to prove either that the purpose of this vertical distribution scheme was to restrain trade or that the scheme actually injured competition, the two "primary considerations" in rule of reason analysis. *Sherman v. British Leyland Motors, Ltd.,* 601 F.2d 429, 449 (9th Cir. 1979). To prove either of these elements, Calculators had to prove more than the undisputed fact that when Hallett was designated district manager for Hawaii, Brandt began selling parts exclusively through Hallett. Yet the court grounded its findings of anticompetitive purpose and effect almost entirely on that fact and the concomitant fact that the new arrangement had the effect of cutting off Calculators' source of Brandt parts.

It may be true, as the district court found, that as a result of the arrangement between Hallett and Brandt, Calculators' business of servicing and repairing Brandt machines suffered, while Hallett obtained over one-half of the Brandt service and repair business. But these facts—that Brandt and Hallett refused to sell parts to Calculators and that Calculators thereby lost business—are simply insufficient standing alone to prove anticompetitive purpose or effect. The refusal to sell parts to Cal-

---

were a corporation in competition with plaintiff and one of the corporation's officers. The officer owned a separate interest in another of the plaintiff's competitors, which accounted for his independent economic stake in any agreement to harm the plaintiff. 496 F.2d at 399–400. Calculators argues that Hallett has an independent stake in the agreement with Brandt, since it is his responsibility to pay his own business expenses out of his commissions. This fact is

not inconsistent with Hallett's status as Brandt's sales agent.

**2.**  The district court properly found *per se* analysis inappropriate because Brandt and Hallett were not competitors. Any "group boycott" therefore consisted of a vertical agreement, to which the rule of reason applies. *See Gough v. Rossmoor Corp.,* 585 F.2d 381, 386–88 (9th Cir.1978), *cert. denied,* 440 U.S. 936, 99 S.Ct. 1280, 59 L.Ed.2d 494 (1979).

culators is precisely the act we are analyzing; it is not *per se* illegal. And a showing of the damage Calculators suffered when its repair business declined is insufficient to demonstrate harm to competition. *Klamath-Lake Pharmaceutical Association v. Klamath Medical Service Bureau,* 701 F.2d 1276, 1292 (9th Cir.1983). If the law were otherwise, exclusive dealerships would be illegal *per se.*

In support of its finding of anticompetitive purpose, the most significant fact the district court cites is that Brandt attempted to keep the independent repairmen from obtaining parts in order to protect the service and repair business of Hallett. Brandt articulated such a policy in a sales manual, stating as its business purpose the enhancement of the income of its sales representatives. But Brandt's wish to enhance the business of its sales representatives by dealing exclusively with them does not alter our analysis. In *Hawaiian Oke, supra,* we reasoned:

> There are many "normal and usual agreements in aid of trade and commerce," * * * which involve the acceptance by the parties of limitations on their freedom individually to deal with others * * *. Requirements contracts, exclusive dealing contracts and contracts involving exclusive territories all involve limitations on the freedom of one or more of the parties to do business with the others * * *. Because all of these situations involve an agreement between two or more persons under which one or more of them agree not to deal with third persons and for that reason foreclose a part of the market to such third persons, they are all subject to scrutiny under the antitrust laws. *But in the ordinary case these do not involve combining for the primary purpose of coercing or excluding; rather they involve combinations of two or more persons to further directly the business of the parties to the agreement, and the effect on third parties and on competition is indirect.*

*Id.* at 77 (quoting Barber, *Refusals to Deal Under the Federal Antitrust Laws,* 103 U.Pa.L.Rev. 847, 876–77 (1955) (emphasis supplied here)). Here, as in *Hawaiian Oke,*[3] "[Hallett's] desire to get the business is the same as exists in every case in which a distributor persuades a supplier to give it an exclusive distributorship . . . . Surely, this is the essence of competition." *Id.* at 78. We hold that Brandt's desire to protect Hallett's business by dealing exclusively with him adds nothing to Brandt's refusal to deal with Calculators. As a result, we hold that the district court erred in concluding that Calculators had proven anticompetitive purpose.

More fundamentally still, "[p]roof that the defendant's activities had an impact upon competition in a relevant market is an absolutely essential element of the rule of reason case." *Kaplan v. Burroughs Corp.,* 611 F.2d 286, 291 (9th Cir. 1979), *cert. denied,* 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980). Once an adverse impact on competition is proven, a defendant may advance countervailing business justifications for a refusal to deal. But the refusal "must first be established to be a restraint on competition and this involves a consideration of the impact of the restraint on the competitive conditions within the field of commerce in which the plaintiff was engaged and upon those commercially engaged in competition within it." *Gough v. Rossmoor Corp.,* 585 F.2d 381, 389 (9th Cir.1978), *cert. denied,* 440 U.S. 936, 99 S.Ct. 1280, 59 L.Ed.2d 494 (1979). In this case, the court addressed and discounted Brandt's business justification for the refusal—to insure the quality of repairs—without ever having assessed the impact upon competition. Even were we to assume that the district court was correct in finding that the relevant geographic market was Hawaii and that the relevant product market was Brandt parts rather than parts for all money-handling machines, the court failed to identify any evidence of harm to competi-

---

**3.** In *Hawaiian Oke,* this court analyzed the purpose behind the exclusive dealing arrangement in order to determine whether a *per se* rule applied. We think the analysis is no less persuasive in the instant context.

tion. Consequently, we reverse the district court's judgment in favor of Calculators with respect to the section 1 claim.

### The Section 2 Claim

 Citing *California Computer Products, Inc. v. IBM Corp.,* 613 F.2d 727 (9th Cir.1979), the district court found that Calculators had proved the four elements necessary to establish a section 2 offense. We need not address the third and fourth *Cal-Comp* criteria, probable success in harming competition and injury to Calculators, because we hold that the court erred in holding that the remaining *CalComp* criteria were satisfied.

■ The court inferred the first criterion, specific intent to control prices or destroy competition, either from its erroneous finding of a section 1 violation or, once again, from the mere refusal to deal. The second criterion, predatory or anticompetitive conduct, consisted of nothing more than the refusal coupled with Calculators' inability to obtain other parts. While "[t]he 'predatory or anticompetitive conduct' element of § 2 attempt . . . encompasses more than violations of § 1," 613 F.2d at 737, section 2 simply measures individual conduct "against the same 'reasonableness' standard governing concerted and contractual activity under § 1," *id.* Hence, our analysis here partially tracks our evaluation of the section 1 claim. It was Calculators' burden to prove that Brandt's acts "were predatory and not predominantly motivated by legitimate business purposes." *Lektro-Vend Corp. v. Vendo Co.,* 660 F.2d 255, 273 n. 20 (7th Cir.1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982). *See also Cowley v. Braden Industries, Inc.,* 613 F.2d 751, 754–55 (9th Cir.) (plaintiff must prove unreasonableness even when defendant has substantial market power), *cert. denied,* 446 U.S. 965, 100 S.Ct. 2942, 64 L.Ed.2d 824 (1980). Not only did Calculators fail to carry its burden, it adduced no evidence that Brandt's behavior was unreasonable. Calculators proved nothing more than that Brandt refused to deal because it

had entered into an exclusive arrangement with Hallett.

### CONCLUSION

In sum, Calculators simply did not proffer "any evidence of anticompetitive effect or intent which would distinguish this dealer substitution case from the myriad of decisions upholding changes in distributors." *A.H. Cox & Co. v. Star Machinery Co.,* 653 F.2d 1302, 1307 (9th Cir.1981). We thus reverse the district court's judgment that Brandt and Hallett violated sections 1 and 2 by refusing to sell parts.

AFFIRMED in part; REVERSED in part.