In re Gilbert McAULEY, Debtor.

Gilbert McAULEY, Appellant,

v.

ORANGE COAST THRIFT & LOAN ASSOCIATION, a California corporation, Appellee.

ORANGE COAST THRIFT & LOAN ASSOCIATION, a California corporation, Plaintiff/Appellant,

v.

Gilbert McAULEY, and David Gill, Trustee, Defendants/Appellees.

BAP Nos. CC–86–1001–VabMe, CC–86–1002–VabMe.

Bankruptcy No. LA–84–11676–WL.

Adv. No. M5–06053–WL.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted May 20, 1986.

Decided Sept. 26, 1986.

Frank Wattles, Manhattan Beach, Cal., for appellant.

Dennis E. McGoldrick, McGoldrick & McGoldrick, Torrance, Cal., for appellee.

Before VOLINN, ABRAHAMS and MEYERS, Bankruptcy Judges.

## OPINION

VOLINN, Chief Judge:

These two appeals (BAP Nos. CC–86–1001 and CC–86–1002), which are concerned with an interrelated judgment and order in the same bankruptcy case, are hereby consolidated. We AFFIRM the bankruptcy court.

### I.

#### A.

In CC–86–1001, Gilbert McAuley, the Chapter 7 debtor, appeals from a "renewed" judgment on complaint for declaratory relief entered in favor of Orange Coast Thrift & Loan Association (OCTL), a secured creditor and the appellee. The judgment is based on the following factual background.

On March 28, 1983, McAuley executed a $75,000 promissory note payable to OCTL, due on October 1, 1983. The note was secured by a deed of trust. No payments were ever made.

Thereafter, McAuley filed two Chapter 7 bankruptcy petitions. The first petition was filed on November 15, 1983 and dismissed on March 19, 1984. On May 16, 1984, OCTL recorded a notice of default as to the deed of trust. Under former California Civil Code § 2924c(a), a person defaulting under a deed of trust was allowed three months after the recording of the notice of default as a reinstatement period before a trustee's sale could be held. The second bankruptcy was filed on June 11, 1984 during the reinstatement period, which presumably would have ended on or about August 16, 1984.

During the second bankruptcy, OCTL sought relief from the automatic stay in order to exercise its power of sale under the deed of trust. OCTL did not request a specific date for a sale. McAuley appeared *in pro per* and asked the bankruptcy judge to hold off any sale until January 21, 1985. The court ruled orally that it would lift the automatic stay immediately, but would postpone the foreclosure sale until December 27, 1984, approximately six weeks after the hearing. On December 10, 1984, the bankruptcy court entered an order providing that OCTL was "hereby relieved of all stay and restraining orders" but that OCTL "may not conduct its trustee's sale prior to December 27, 1984." The second bankruptcy was dismissed on December 20, 1984.

The trustee's sale was held on December 28, 1984, and OCTL obtained the property at the sale.

On March 1, 1985, McAuley brought an action against OCTL in California state court, asking the court to set aside the trustee's sale because it had been premature. The complaint alleged that McAuley's second bankruptcy petition had tolled the running of the statutory reinstatement period and therefore he was not allowed a full three months before the sale.[1]

OCTL then moved to reopen the second bankruptcy estate and filed a "Complaint for Declaratory Relief, to Annul the Automatic Stay." OCTL's complaint alleged that by postponing the foreclosure sale as it had in its previous order, the bankruptcy court "was in effect annulling the automatic stay," and therefore the three-month reinstatement period had not been tolled, but had continued to run.

The case was reopened and a hearing on the requested declaratory relief was held. The bankruptcy judge expressly stated that he had not been asked previously, in 1984, to annul the automatic stay, although if he had been asked for annulment then, "I would have given it." The court stated:

> Well, I've made the declaration that implicit in my order, in my intent was that ... the stay be annulled, but really, that the stay not have the force and effect of tolling the statute. I think using the word annulled get's [sic] maybe a little too specific.
>
> It was my intent that the automatic stay in this court, in this case, not toll the statute in such a way as to interfere with a foreclosure taking place on or after the 28th of ... December.

The judgment ultimately entered by the bankruptcy court on December 17, 1985— and from which McAuley appeals—provided that:

> ... it is hereby
>
> ORDERED, ADJUDGED AND DECREED, that when this Court granted relief from the automatic stay ... at the hearing on November 15, 1984 ... the Court ruled that the automatic stay ... did not have the force and effect of tolling the running of the time period required under California Code of Civil Procedure Section 2924 for the publication of a notice of default and that publication of a foreclosure sale could commence immediately to allow a foreclosure sale no earlier than December 27, 1985 [sic–1984], and further
>
> ORDERED, ADJUDGED and DECREED, that the application of Gilbert McAuley to have this Court abstain from hearing this matter is denied.

1. Because of the disposition of this appeal on other grounds, we do not reach this issue.

Certain procedural problems surrounding the entry of this judgment constitute the basis for OCTL's appeal in CC–86–1002, which will be explained below.

### B.

The original judgment on complaint for declaratory relief was entered on November 12, 1985. It did not expressly dispose of a request for reconsideration filed by McAuley on November 7, several days before. McAuley's attorney did not learn that judgment had been entered until December 3 or 4, when he received copies of pleadings filed by OCTL in the state court action, asking the state court to take judicial notice of the bankruptcy court's judgment.[2]

McAuley's attorney immediately contacted the bankruptcy court to confirm that judgment had been entered, and then the law clerk for the bankruptcy judge to request expedited action on his request for reconsideration.

Thereafter, the bankruptcy judge entered an order setting aside the original judgment and denying McAuley's request for reconsideration. The express purpose of this order was to dispose of the request for reconsideration and to preserve McAuley's right to appeal, which he had not exercised because of his belief that the appeal period was tolled by his request for reconsideration, combined with his lack of notice as to entry of judgment.

It is this order from which OCTL appeals in CC–86–1002.

The bankruptcy judge entered the "renewed" judgment from which McAuley appeals at the same time it entered the order setting aside the original judgment, on December 17, 1985. The renewed judgment is a retyped version of the original one. Both McAuley and OCTL then filed timely notices of appeal.

### II.

The first issue is the timeliness of McAuley's appeal. OCTL contends that the order setting aside the original judgment was an abuse of discretion because it had the effect of allowing McAuley to take an untimely appeal. We hold that the appeal is timely on the following alternative grounds.

### A.

The original judgment was entered on November 12, 1985. McAuley had until November 22 in which to file a notice of appeal, or until December 12 in which to file a motion to extend time for appeal. BR 8002(a), (c).

McAuley's attorney apparently did not receive notice of entry of judgment until December 3 (when his office received the state court papers) or December 4 (when he read them). The judgment, however, did not expressly dispose of his premature Request for Reconsideration, which was filed on November 7.

Certain timely motions will toll the time for appeal. BR 8002(b). The Ninth Circuit considers a motion for reconsideration to be a motion to "alter or amend the judgment" within the meaning of BR 8002(b)(3), which is one of the tolling motions. *In re Branding Iron Steak House*, 536 F.2d 299, 301 (9th Cir.1976) (construing former BR 802(b)(3)). Normally, such motions must be served not later than 10 days after entry of judgment in order to be timely. BR 9023; Fed.R.Civ.P. 59(e). However, the Ninth Circuit also considers a premature postjudgment motion—one that is filed before entry of judgment—to be timely for purposes of calculating the time for appeal. *Calculators Hawaii, Inc. v. Brandt, Inc.*, 724 F.2d 1332, 1335 (9th Cir.1983) (construing Fed.R.Civ.P. 52(b) and Fed.R.App.P. 4(a)(4)).

■ Therefore, McAuley's premature request for reconsideration was timely and

---

**2.** According to the briefs of both parties, the state court subsequently granted partial summary judgment in favor of OCTL.

tolled the time for appeal until it was disposed of.

The next question is whether the original judgment disposed of McAuley's premature request for reconsideration.

The test is to "look to the judgment itself to see whether a denial of all pending motions was intended." *Calculators Hawaii, Inc.*, 724 F.2d at 1335. A leading treatise criticizes the mere entry of a judgment as impliedly denying pending motions. *See* 9 Moore's Federal Practice ¶ 204.12[4] at 4–85 (2d ed. 1985).

The original judgment did not deal with or refer to any of the issues presented by the premature request for reconsideration. The bankruptcy court confirmed this in the order appealed from. Therefore, McAuley's time for appeal was still being tolled when he contacted the bankruptcy court on December 4 and requested expedited action on his request for reconsideration.

### B.

■ Even if the original judgment did dispose of the request for reconsideration, McAuley still had time on December 4 to bring a motion for extension of time to appeal based on excusable neglect (no notice of entry of judgment). BR 8002(c). On the facts before us, his failure to bring such a motion should not be held against him because of the doctrine of "unique circumstances."

Under the doctrine of "unique circumstances," courts have jurisdiction to hear an otherwise untimely appeal:

> Courts will permit an appellant to maintain an otherwise untimely appeal in unique circumstances in which the appellant reasonably and in good faith relied upon judicial action that indicated to the appellant that his assertion of his right to appeal would be timely, so long as the judicial action occurred prior to the expiration of the official time period such that the appellant could have given timely notice had he not been lulled into inactivity.

*United Artists Corp. v. La Cage Aux Folles, Inc.*, 771 F.2d 1265, 1268 (9th Cir. 1985) (quoting with approval from *Willis v. Newsome*, 747 F.2d 605, 606 (11th Cir.1984) (per curiam), *cert. denied*, — U.S. —, 106 S.Ct. 1273, 89 L.Ed.2d 581.) *See also Matter of Estate of Butler's Tire & Battery Co., Inc.*, 592 F.2d 1028, 1031–32 (9th Cir.1979). It is important that the judicial action upon which the appellant relied occurred *before* the time had expired when the appellant could have done something to preserve his rights. *See Fiester v. Turner*, 783 F.2d 1474, 1476 (9th Cir.1986).

■ McAuley is entitled to the protection of the doctrine of unique circumstances because while he could have still brought a motion for extension of time to appeal, the bankruptcy court apparently volunteered to vacate and reenter the judgment in order to solve the problem, and McAuley relied upon that. Therefore, any issue of untimeliness should be resolved in McAuley's favor.

We conclude that we have jurisdiction to hear McAuley's appeal.[3]

### III.

After the substantive wheat is separated from the procedural chaff, McAuley's appeal raises two issues: (1) whether the bankruptcy court should have abstained

---

3. OCTL relies heavily upon two cases that are distinguishable from the case before us. The first case is *Rodgers v. Watt*, 722 F.2d 456 (9th Cir.1983), where the appellant did not discover that judgment had been entered until *after* the maximum time for extension of time for appeal had expired. *Id.* at 458. The "test" for a court vacating and re-entering a judgment to allow a timely appeal was limited to the standards under Fed.R.Civ.P. 60(b), which was not invoked here. *See Fiester v. Turner*, 783 F.2d 1474, 1475–76 (9th Cir.1986).

The second case, *Ashby Enterprises, Ltd. v. Weitzman, Dym & Associates*, 780 F.2d 1043 (D.C.Cir.1986), is also distinguishable. In *Ashby*, the appellant sought to have the judgment vacated and re-entered in order to re-start the time for filing a notice of appeal due solely to lack of notice of entry of judgment. There was no issue of any reliance upon actions of the trial court, as here.

from hearing the complaint for declaratory relief, pursuant to 28 U.S.C. § 1334; and (2) whether the bankruptcy court's "clarification" of its previous order was an improper "modification" granted without the required showing under Fed.R.Civ.P. 60(b), made applicable to bankruptcy cases through BR 9024.[4]

### A.

The cited statute, 28 U.S.C. § 1334, provides for "mandatory" and "permissive" abstention. Assuming, *arguendo*, relevance of the mandatory abstention provision, nevertheless it could not apply to cases pending on July 10, 1984. *See* 28 U.S.C. § 1334(c)(2); Sec. 122(b) of Pub.L. 98–353. Here, the bankruptcy court reopened a case that had been pending on July 10, 1984. It therefore would have no obligation to abstain.

▪ Nor did the bankruptcy court abuse its discretion by declining to abstain pursuant to the permissive abstention statute, 28 U.S.C. § 1334(c)(1). A bankruptcy court may abstain from hearing a particular proceeding for any of the following reasons: (1) in the interest of justice; (2) in the interest of comity with state courts; or (3) respect for state law. *Id.* The court should not abstain where the record reveals that the policy considerations in favor of abstention do not exist. *In re DeLorean Motor Co.*, 49 B.R. 900, 910 (Bankr.E.D. Mich.1985). None of the statutory reasons, or the policy considerations behind them, exists here. A complaint for declaratory relief, asking the bankruptcy court to state what it meant in a previous order concerning the automatic stay, which is within the exclusive jurisdiction of the bankruptcy court, does not present any issues of comity with state courts or respect for state law.

### B.

McAuley also contends that although OCTL described its complaint as seeking declaratory relief, OCTL in fact sought relief from a final order and therefore should have complied with Fed.R.Civ.P. 60, made applicable to cases under the Code through BR 9024. McAuley argues that the bankruptcy court modified its previous order without OCTL making the required showing under Rule 60(b).

OCTL responds that the omission of the words "annulment" or "the stay is annulled" from a judgment that "inherently contained an amendment [sic] of the stay" was a clerical error that can be corrected at any time under Rule 60(a).

The Rule 60 issue was raised below by McAuley in his responsive pleadings. OCTL argued below that Rule 60 did not apply. The bankruptcy court did not rule expressly one way or the other about the applicability of Rule 60, but did say: "So he really wants a clarification ... I'm going to grant the clarification."

A leading treatise comments:

Thus a motion under Rule 60(a) can only be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced.

11 Wright & Miller, Federal Practice & Procedure, § 2854 at 149 (1973).

The record shows that no issue of annulment or tolling of the California statute was presented to the bankruptcy court at the original hearing in 1984 by McAuley or OCTL. At that time, OCTL requested "relief" from the automatic stay and asserted that cause existed for "terminating" the automatic stay. The bankruptcy court simply ruled the stay would be "lifted" and entered an order that "relieved" OCTL from the stay. Annulment is a term of art; the Code clearly distinguishes between "terminating, annulling, modifying, or conditioning" a stay. 11 U.S.C. § 362(d). During the 1985 hearing, the bankruptcy court said, definitively, that "there's no

---

**4.** McAuley also contends that he was entitled to a trial, or if the hearing below is construed to be a trial, then he was entitled to findings of fact and conclusions of law. We reject these contentions because the issue below was a question of law, not fact.

question about it. Nobody asked me to give an annulment."

If the bankruptcy was dismissed on December 20, 1984, then the automatic stay would have terminated on that day but for the court's order holding that the foreclosure sale could not be held prior to December 27, 1984. Thereafter, there was no stay. 11 U.S.C. § 362(c)(2)(B). Thus, the only factor inhibiting OCTL from going ahead with foreclosure after December 20 was the order of December 10. That order obviously provided that OCTL's foreclosure proceed without regard to whether or not the notice period was tolled. The court, in effect, whether correctly or incorrectly, ruled that on and after a date certain, the secured creditor was free to foreclose. There was no appeal of this order and the case was dismissed. We believe that the December 17, 1985 renewed judgment presently appealed from is simply explanatory of this record and does not alter the previous order of December 10, 1984 and the record on which it was based.

 The judgment on complaint for declaratory relief now on appeal does not grant an annulment or say that one was actually granted in 1984. It simply makes explicit the court's intention that the automatic stay not toll the statute in such a way as to interfere with the foreclosure taking place on or after December 28, 1984. This intent is obvious from the terms of the 1984 order itself, as well as from a review of the transcript of the 1984 hearing. Therefore, it does not constitute the kind of relief from judgment contemplated by Rule 60(b), which deals with specific grounds for modification.

The judgment and order appealed from are AFFIRMED.