**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: JIM LEE WIERSMA; In re:
PATRICIA DARLENE WIERSMA,
<em>Debtors,</em>

---

JIM LEE WIERSMA; PATRICIA
DARLENE WIERSMA,
<em>Appellants,</em>

v.

BANK OF THE WEST, f/k/a United
California Bank,
<em>Appellee,</em>

UNITED STATES TRUSTEE,
<em>Trustee-Appellee.</em>

No. 05-35246

BAP Nos.
ID-02-01523-MaPB
ID-02-01541-MaPB
ID-03-01215-MaPB
ID-03-01224-MaPB

In re: JIM LEE WIERSMA; In re:
PATRICIA DARLENE WIERSMA,
<em>Debtors,</em>

---

BANK OF THE WEST, f/k/a United
California Bank,
<em>Appellant,</em>

v.

JIM LEE WIERSMA; PATRICIA
DARLENE WIERSMA,
<em>Appellees.</em>

No. 05-35248

BAP No.
ID-02-01523-MaPB

OPINION

3921

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Brandt, Perris, and Marlar, Bankruptcy Judges, Presiding

Argued and Submitted
November 14, 2006—Portland, Oregon

Filed April 6, 2007

Before: Warren J. Ferguson, Diarmuid F. O'Scannlain, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Ferguson

## COUNSEL

Brent T. Robinson, Ling, Robinson, & Walker, Rupert, Idaho, for the debtors-appellants/cross-appellees.

Kelly Greene McConnell, Givens Pursley LLP, Boise, Idaho, for the appellee/cross-appellant.

Michele M. Mansfield and Knight Elsberry, United States Department of Justice, Executive Office for the United States Trustee, Washington, D.C., for the appellee.

## OPINION

FERGUSON, Circuit Judge:

Debtors Jim and Patricia Wiersma ("Debtors"), former dairy farmers, appeal the decision of the Bankruptcy Appellate Panel ("BAP") of the Ninth Circuit on issues related to their Chapter 11 bankruptcy case.

Debtors allege error in the BAP's conclusions that (1) creditor Bank of the West ("Bank") held a secure interest in Debtors' settlement proceeds; (2) issues pertaining to court approval of that settlement were moot; (3) the bankruptcy court did not err in denying confirmation of Debtors' Second Amended Plan for reorganization; and (4) the bankruptcy court acted within its discretion in dismissing Debtors' bankruptcy case. Bank cross-appeals the BAP's assertion of jurisdiction over the Secured Status Order, as does the U.S. Trustee. The Trustee also appeals the BAP's assertion of jurisdiction over the bankruptcy court's order of February 5,

2003, and urges the court to affirm the BAP's conclusion that the bankruptcy court did not abuse its discretion in dismissing Debtors' case.

We reverse the BAP's holding that it had jurisdiction over the Secured Status Order and, in a separate memorandum disposition, affirm the BAP on all other issues.

## *FACTUAL AND PROCEDURAL HISTORY*

In 1985, Debtors began operating a large dairy farm in Idaho. In 1998, they obtained a loan from Bank of the West (f/k/a Sanwa Bank, f/k/a United California Bank), secured by Debtors' contractual rights to payment, general intangibles, livestock, and milk products quota.

Faulty wiring installed and maintained at the dairy by Gietzen Electric ("Gietzen") caused electrical shocks to the 2,000-cow herd, and many of the animals became sick and died. In September 2000, Debtors commenced an action in state court against Gietzen for the losses caused by the faulty wiring. Debtors raised claims of negligence, breach of contract, negligent hiring and supervision, fraud, violations of the state Consumer Protection Act, and breach of warranty. They sought approximately $6 million in damages.

As a result of the electrical shocks to the animals, Debtors' business suffered, and in October 2001 Debtors filed for Chapter 11 bankruptcy. Bank had a $2.2 million secured credit claim, making it Debtors' largest secured creditor. In July 2002, Debtors filed a Motion To Determine Secured Status to clarify what right, if any, Bank and O.H. Kruse (another creditor, no longer a party to this action) held in the proceeds of Debtors' pending lawsuit against Gietzen. In September 2002, the bankruptcy court issued an order resolving the respective interests in the Gietzen settlement ("Secured Status Order" or "Order"). The Order held that both Bank and Kruse

had secured interests in any settlement proceeds. Debtors timely appealed to the BAP.

In December 2002, the BAP clerk issued an order raising questions about the finality of the Secured Status Order (and thus its immediate appealability). The clerk's order stated, "The routine jurisdictional screening conducted by the BAP suggests that there may be an issue concerning the finality of the order on appeal." *In re Wiersma*, Nos. ID-02-1523, ID-02-1541 (B.A.P. 9th Cir. Dec. 5, 2002) (clerk's order re finality issue). The BAP order gave the parties fourteen days to brief the finality issue. One week later, Bank submitted its response, which, according to the BAP's subsequent summary, "contend[ed] that there might be additional appeals arising from the underlying bankruptcy case in the immediate future." *In re Wiersma*, Nos. ID-02-1523, ID-02-1541 (B.A.P. 9th Cir. Jan. 17, 2003) (order re finality issue). Debtors did not respond to the order.

On January 17, 2003, the BAP issued a second order regarding the finality of the Secured Status Order, directing Debtors and Kruse to explain why the order was final, why leave to appeal should be granted, and why the appeals should not be stayed pending the confirmation hearing. *Id.* It also stated, "Failure to timely respond may result in dismissal of their respective cross-appeals for lack of prosecution." *Id.*

On February 7, 2003, the BAP dismissed Debtors' appeal of the Secured Status Order for failure to prosecute. It gave Debtors ten days to request judicial review and reconsideration of the order. Eleven days later, Debtors filed a response with the Bankruptcy Court for the District of Idaho, not with the BAP. The BAP received the response several days later, construed it as an untimely request for judicial review, denied it, and left the February 7 dismissal in place.

In April 2003, after the bankruptcy court dismissed Debtors' bankruptcy case, Debtors appealed the Secured Status

Order of several months earlier. On appeal, the BAP vacated its prior dismissal of Debtors' first appeal of the Secured Status Order, concluding that the dismissal had been in error. With one judge dissenting in part, the BAP held that it had jurisdiction over the appeal of the Secured Status Order because of its inherent authority to correct its own mistakes and because of the unique circumstances doctrine. *Wiersma v. O.H. Kruse Grain & Milling* (*In re Wiersma*), 324 B.R. 92, 104, 105 (B.A.P. 9th Cir. 2005). Bank appeals this holding.

## *DISCUSSION*

We review de novo jurisdictional issues in bankruptcy cases. *Mantz v. Cal. State Bd. of Equalization* (*In re Mantz)*, 343 F.3d 1207, 1211 (9th Cir. 2003).

**[1]** Generally, a party to a bankruptcy action must file a notice of appeal within ten days after entry of the order being appealed. Fed. R. Bankr. P. 8002(a). The timely appeal requirement is jurisdictional. *Preblich v. Battley*, 181 F.3d 1048, 1056 (9th Cir. 1999). "[T]he failure to timely file a notice of appeal is a jurisdictional defect barring appellate review." *Lopez v. Long* (*In re Long*), 255 B.R. 241, 243 (B.A.P. 10th Cir. 2000) (quotations omitted). The purpose of the Rule is to enable "prompt appellate review, often important to the administration of a case under the Code." Fed. R. Bankr. P. 8002 advisory committee note.

**[2]** In this case, the order in question is the Secured Status Order of September 20, 2002, in which the bankruptcy court held that the Gietzen settlement proceeds belonged to Bank.[1] Debtors timely appealed this order to the BAP on September

---

[1]The U.S. Trustee argues that Debtors' appeal of the bankruptcy court's settlement approval order is also untimely and hence jurisdictionally barred. The BAP, however, did not assert jurisdiction over that portion of the appeal. It properly dismissed the settlement appeal as moot and thus nonjusticiable.

30, 2002, within ten days of the filing of the Order. After Debtors twice failed to respond to the BAP clerk's questions concerning finality, however, the BAP dismissed that appeal for failure to prosecute. Debtors' second appeal of the Secured Status Order was filed on April 9, 2003, six and a half months after the Order was filed, well beyond the ten-day limit provided by Fed. R. Bankr. P. 8002(a).

Nevertheless, the BAP held that it retained jurisdiction for two reasons. First, it concluded that because a court has jurisdiction to correct its own mistakes, it was entitled to correct its "mistake" with regard to the finality of the Order. Second, the BAP held that the unique circumstances doctrine allowed the untimely appeal to proceed because the BAP clerk's finality orders had misled Debtors into believing the Order was interlocutory. For the reasons discussed below, neither of these rationales justifies the BAP's exercise of jurisdiction over the Secured Status Order.

**Finality**

**[3]** As a threshold issue, we must determine whether the Order was in fact final. If it was interlocutory, as Debtors argue, their appeal in April was timely. If, on the other hand, the Order was final, the appeal should have been filed within ten days of its issuance. Fed. R. Bankr. P. 8002.

**[4]** An order is final if it constitutes a complete adjudication of the issues at bar and clearly evidences the judge's intention that it be final. *In re Slimick*, 928 F.2d 304, 307 (9th Cir. 1990). The Secured Status Order met these requirements. The bankruptcy court's determination of Bank's security interest in any proceeds from the Gietzen suit resolved every issue relating to the validity and extent of the Bank's liens. Subsequent appeals of the court's refusal to confirm a plan and its decision to dismiss the case did not relate to the court's analysis of Bank's ability to attach the Gietzen settlement proceeds. Regardless of the outcome of the plan confirmation, Bank's

interests were resolved by the Order. The record also evidences the judge's intent that the Secured Status Order be final where the judge stated, "As far as I'm concerned in [these] proceedings that's a final order." *In re Wiersma*, No. BK-01-41874 (Bankr. D. Or. Mar. 28, 2003) (judge's telephonic ruling).

Furthermore, "a bankruptcy order is appealable where it 1) resolves and seriously affects substantive rights and 2) finally determines the discrete issue to which it is addressed." *In re Frontier Properties, Inc.*, 979 F.2d 1358, 1363 (9th Cir. 1992). In determining the parties' respective interests in the proceeds of a major damages action, the Secured Status Order resolved and seriously affected the parties' substantive rights and finally determined to whom the proceeds would flow. As the bankruptcy judge observed, "If this case were to be dismissed presumably the bank would be entitled to receive the 1.442 million dollars in cash from the Gietzen settlement." *In re Wiersma*, No. BK-01-41874 (Bankr. D. Or. Mar. 28, 2003) (judge's telephonic ruling).

**[5]** For these reasons, we conclude the Order was final and Debtors' first appeal was not interlocutory.

### Doctrine of Mistake

**[6]** A bankruptcy court has the authority to correct its own mistakes of fact by discharging a prior order. *Cisneros v. United States (In re Cisneros)*, 994 F.2d 1462, 1466 (9th Cir. 1993). In *Cisneros*, the court granted the debtors a full compliance discharge after it mistakenly concluded that all creditors had been paid. *Id*. at 1464. In fact, however, the Internal Revenue Service had filed a proof of claim that went unrecorded and unpaid. *Id*. The court learned this fact after it had discharged the case, and it accordingly dismissed the discharge and reinstated the case. *Id*. On appeal, we affirmed the bankruptcy court's authority to vacate the discharge based on "a misapprehension as to the facts of the case." *Id*. at 1467.

**[7]** A bankruptcy court also retains "inherent power to correct its own clerical errors." *Duplessis v. Valenti* (*In re Valenti*), 310 B.R. 138, 147 (B.A.P. 9th Cir. 2004) (quoting *Ford v. Ford* (*In re Ford*), 159 B.R. 590, 593 (Bankr. D. Or. 1993)); *see also* Fed. R. Civ. P. 60(a); Fed. R. Bankr. P. 9024. Clerical errors involve "administrative lapse[s]." *In re Brown*, No. 02-63073-aer13, 2006 Bankr. LEXIS 939, at *18 (Bankr. D. Or. May 31, 2006).

In this case, the BAP concluded that it made two mistakes in the original dismissal. First, it "mistakenly believed the [Secured Status Order was] interlocutory." *In re Wiersma*, 324 B.R. at 104. Second, it "mistakenly dismissed [the appeal] for lack of prosecution when [its] orders were intended . . . to dismiss the appeals as interlocutory." *Id*. Neither mistake is sufficient to discharge the original order dismissing the appeal.

**[8]** The first mistake, regarding the actual status of the order as either interlocutory or final, is an issue of law, not one of fact. *Cisneros*, on which the BAP relied, dealt with the bankruptcy court's misapprehension of whether all creditors had been paid, an issue of fact. *Cisneros*, 994 F.2d at 1467. *Cisneros* did not deal with whether the court correctly analyzed the legal issues on appeal. The BAP's legal mistake in this case cannot be characterized as a "clerical error."

**[9]** The second purported mistake, that the BAP dismissed the appeal for failure to prosecute when it really meant to dismiss it as interlocutory, could be the type of administrative lapse that constitutes a clerical error. That this was such an error, however, is not supported by any evidence in the record. The second order by the BAP court clerk explicitly stated that failure to respond to the request for briefing on the finality issue "may result in dismissal . . . *for lack of prosecution*." *In re Wiersma*, Nos. ID-02-1523, ID-02-1541 (B.A.P. 9th Cir. Jan. 17, 2003) (order re finality issue) (emphasis added). When Debtors failed to respond, that is exactly what

happened: "the appeal [was] DISMISSED for failure to prosecute." *In re Wiersma*, Nos. ID-02-1523, ID-02-1541 (B.A.P. 9th Cir. Feb. 7, 2003) (order of dismissal). There is no evidence that the BAP's intent was to dismiss the appeal as interlocutory. As the dissenting BAP judge recognized, "There was neither an inadvertent misapprehension of the facts, nor did the initial dismissals not reflect the panel's real intentions." *In re Wiersma*, 324 B.R. at 115 (Brandt, J., dissenting in part).[2]

**[10]** For these reasons, there was no mistake of fact that would justify revoking the BAP's dismissal of the original appeal of the Secured Status Order.

### Doctrine of Unique Circumstances

**[11]** The second doctrine invoked by the BAP to justify its jurisdiction was the doctrine of unique circumstances. *In re Wiersma*, 324 B.R. at 104-05. Under the doctrine of unique circumstances, a party's untimeliness in appealing an order may be excused if the party relied on the specific assurances of a court that the appeal would be timely. *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 179 (1989).[3]

In concluding that the unique circumstances doctrine allowed it to revisit the Secured Status Order, the BAP relied on *In re McAuley v. Orange Coast Thrift & Loan Ass'n* (*In re McAuley*), 66 B.R. 696, 700 (B.A.P. 9th Cir. 1986). *In re McAuley* adopted the "reasonable, good faith reliance" standard established in *United Artists Corp. v. La Cage Aux Fol-*

---

[2]Judge Brandt was in an ideal position to determine the panel's intent: the second order to show finality, threatening to dismiss for failure to prosecute, had been before him.

[3]The doctrine arose from three Supreme Court cases in the 1960s. *See Wolfsohn v. Hankin*, 376 U.S. 203 (1964); *Thompson v. INS*, 375 U.S. 384 (1964); *Harris Truck Lines v. Cherry Meat Packers, Inc.*, 371 U.S. 215 (1962).

*lies, Inc.*, 771 F.2d 1265, 1268 (9th Cir. 1985). *In re McAuley*, 66 B.R. at 700. Under that test, an appellant's untimely appeal will be overlooked if, in good faith, she reasonably relied on some action by the court that led her to believe a later appeal would still be timely. *United Artists*, 771 F.2d at 1268. In *Slimick v. Silva* (*In re Slimick*), 928 F.2d 304, 309-10 (9th Cir. 1990), however, we expressly disapproved of the *United Artists* standard in light of the Supreme Court's decision in *Osterneck*. *See also Mount Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1462 (9th Cir. 1992) (observing that "[s]ubsequent decisions of the Supreme Court and of our court . . . have invalidated the good faith and reasonable reliance standard").

**[12]** In the wake of *Osterneck*, *In re Slimick*, and *Mt. Graham Red Squirrel*, it is no longer sufficient for the appellant to show that her delay was caused by her reasonable and good faith reliance on some action by a judicial officer that led her to believe a delayed appeal would be timely. Rather, "the doctrine applies only where a court has *affirmatively assured* a party that its appeal will be timely." *In re Slimick*, 928 F.2d at 310 (emphasis added). It is not enough that the court have engaged in some "ambiguous or implicitly misleading conduct." *Id.* The court must have "*explicitly misl*[*ed*] a party." *Allred v. Kennerley* (*In re Kennerley*), 995 F.2d 145, 148 (9th Cir. 1993).

In this case, the BAP concluded that it had "led [Debtors] to believe that their original appeals were interlocutory" and that they could therefore wait to appeal until after the final order was issued. *In re Wiersma*, 324 B.R. at 105. The BAP held that Debtors had "relied, in good faith, on the panel's judicial action in renewing their appeals in 2003." *Id.*

**[13]** In using a "good faith" standard, the BAP misapplied the unique circumstances doctrine. The BAP should have determined whether it or the bankruptcy court had explicitly misled Debtors or given affirmative assurances that a subse-

quent appeal would be timely. *See In re Kennerley*, 995 F.2d at 148; *In re Slimick*, 928 F.2d at 309-10. A review of the record indicates there were no such assurances. The BAP clerk's order stated, "The routine jurisdictional screening conducted by the BAP *suggests* that there *may* be an issue concerning the finality of the order on appeal." *In re Wiersma*, Nos. ID-02-1523, ID-02-1541 (B.A.P. 9th Cir. Dec. 5, 2002) (clerk's order re finality issue) (emphasis added). At no point did the BAP actually conclude that the Order was interlocutory and that appeal would be available later in the case.

[14] At most, the BAP's language in the order was "ambiguous or implicitly misleading," but even that conduct "does not release litigants from their appeal deadlines." *In re Slimick*, 928 F.2d at 310. If Debtors believed the BAP clerk's requests for briefing on the finality issue were conclusions that the appeal was interlocutory, they should have sought clarification that they would be allowed to file a timely appeal later in the proceedings. *See id.*

[15] For these reasons, the unique circumstances doctrine did not give the BAP jurisdiction to reconsider the Secured Status Order.

**Law of the Case Doctrine**

[16] Finally, the BAP's exercise of jurisdiction over the Order violates the law of the case doctrine. "Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *Hydrick v. Hunter*, 466 F.3d 676, 687 (9th Cir. 2006) (quoting *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988)); *see also Coleman v. Calderon*, 210 F.3d 1047, 1052 (9th Cir. 2000) (discussing finality rationale for the doctrine). Had the BAP actually made a mistake or had there been unique circumstances, equity concerns might outweigh the finality concerns of the

doctrine. In this case, however, the BAP's decision to revisit a previously dismissed issue was improper.

## *CONCLUSION*

The BAP no longer retained jurisdiction over the appeal of the Secured Status Order after it dismissed the appeal for failure to prosecute. The doctrines of mistake and unique circumstances do not justify the BAP's reassertion of jurisdiction over the issue at the end of the case. Furthermore, the law of the case doctrine precludes the BAP from revisiting the Order.

For these reasons, the BAP's holding that it had jurisdiction to review the Secured Status Order is **REVERSED**.