TROTT, Circuit Judge:
 

 Robert P. and Delora J. Noli appeal from a decision of the United States Tax Court dismissing their petition for redetermination of deficiencies in their income tax for the tax years 1974 through 1978. Petitioners raise a number of issues, both procedural and substantive in nature. We affirm.
 

 I.
 

 In the mid-1960’s, petitioner Robert Noli established a chiropractic practice in Merced, California. With the assistance of his wife, the practice was operated as a sole proprietorship until late 1973. In September or October of 1973, Robert Noli, aided by a tax return preparer, formed two wholly-owned Nevada corporations, Robco and Deeco. Mr. Noli’s chiropractic practice and its good will were transferred to Rob-co, Inc. in exchange for 100 percent of its stock. Mr. and Mrs. Noli’s personal residence, real property, automobiles, and office equipment related to the chiropractic practice were transferred to Deeco, Inc. in
 
 *1523
 
 exchange for 100 percent of its stock. In the taxable years 1974, 1975, 1976, 1977 and 1978, the Nolis and the two corporations received gross income of approximately $1,117,740.00. In the five tax years in question, Mr. and Mrs. Noli reported on their joint federal tax returns a total of only $85,679.00 as income derived from the chiropractic business and other investments.
 

 An audit of the Nolis’ and the corporations’ returns for the years 1974 through 1978 indicated that certain nondeductible family expenses, including swimming pool maintenance, residential lawn work and utilities, travel and entertainment, and automobile repair and maintenance, were claimed as deductible corporate expenses. The audit similarly indicated that the Nolis’ income from the salaries they received as compensation under their agreement with Robco, Inc. for their work in the chiropractic business was merely nominal. Accordingly, the Commissioner reallocated the corporate income and allowable deductions to the Nolis. The Commissioner disallowed other deductions, determining that they were nondeductible personal expenses, or were inadequately substantiated. As a result, statutory notices of deficiency were issued.
 

 II.
 

 On April 5, 1982, the Nolis, represented by Michael R. Pinatelli of San Francisco, filed petitions in the United States Tax Court, disputing the entire amount determined as deficiencies by the Commissioner. They maintained principally that their dealings with Robco and Deeeo were conducted at arms length, and that the Commissioner’s reallocation of income and deductions was erroneous. They requested and were granted a trial on their petition. The Commissioner timely filed his answer denying the material allegations of the petition.
 

 On August 18, 1983, George Balyea of Fresno, California, entered his appearance as counsel for petitioners. Shortly thereafter, on August 22, 1983, Mr. Pinatelli withdrew his appearance. On November 19, 1984, the Tax Court set the case for trial in San Francisco on February 11,1985. Approximately one month later, Mr. Balyea moved to withdraw his appearance, which motion was granted on January 3, 1985. Curtis Berner and E. Rick Buell II of San Francisco then entered their appearances for the petitioners.
 

 On January 3, 1985, the parties filed a joint motion to continue the trial on the basis that a report from a re-audit requested by petitioners’ prior counsel was not yet complete, and that new counsel required additional time, in any event, to prepare the ease. The motion was denied. At a subsequent hearing before the Tax Court to explore settlement and other pretrial issues, petitioners’ counsel renewed the motion for a continuance. The court ordered the case continued pending further direction of the court, denying petitioners’ motion as moot. The court further ordered the parties to file a status report with the court no later than May 13, 1985.
 

 On May 14, 1985, petitioners’ counsel, Mr. Berner, filed a status report indicating that “[t]he possibilities of settlement appears [sic] to be very strong,” and requesting that the court postpone docketing the case for trial and schedule the filing of another status report within 60 days.
 

 On September 24, 1986, the Tax Court restored the case to the general docket for trial “in due course.” On October 23,1986, Mr. Berner moved to withdraw his appearance, and on the same day, John Yohanan of San Jose, California, entered his appearance for the petitioners. On November 20, 1986, the Tax Court ordered the case set for trial on April 20, 1987 in San Francisco.
 

 On the date set for trial, stipulations were filed and petitioners’ counsel agreed to recommend settlement on the basis of figures prepared on re-audit of their returns. Petitioners declined to settle. On April 23, 1987, the parties again appeared in Tax Court, where further discussion was had with an eye towards settlement. When petitioners remained opposed to settlement, the Tax Court judge agreed to return to San Francisco from Washington, D.C., on May 7, 1987 to try the case.
 

 
 *1524
 
 On May 7, 1987, at 9:30 a.m., the Tax Court was reconvened for trial. Neither the petitioners nor their counsel were present. At approximately 10:00 a.m., John Cicero, then of the firm of Lund and Cicero of Tampa, Florida, entered his appearance for the petitioners. He was accompanied by Walter Copeland, a certified public accountant. Mr. Cicero informed the court that bankruptcy petitions had been filed that morning on behalf of the Nolis. He stated that he expected to receive confirmation of the filings shortly and argued that the Tax Court proceedings were thereby stayed. The court, however, instructed Mr. Cicero to proceed with trial, whereupon he moved for a continuance to await confirmation of the bankruptcy filings. Mr. Cicero also requested a continuance in any event due to the asserted unavailability of petitioners’ expert, CPA John Priest, by reason of Priest’s post-surgical ill health. Mr. Cicero also asserted that a continuance was justified in that petitioners would be greatly prejudiced due to Cicero’s unfamiliarity with the case.
 

 The Tax Court denied the motions and instructed counsel to put on his first witness. Mr. Cicero requested a delay of the trial so that he might telephone petitioners and have them come to the courthouse. The court declined, noting that not only did the petitioners receive an order to appear at 9:30 a.m., but they had also called the judge’s secretary in order to confirm the trial time. In response to the court’s inquiries, Mr. Cicero admitted that he himself had advised petitioners to remain at the hotel instead of appearing for trial at the time set by the order.
 

 With his motions denied and with the court instructing him to proceed, Mr. Cicero presented the testimony of Mr. Copeland. On questioning from the court, Mr. Copeland stated that, apart from seeing documents such as tax returns and statutory notices of deficiency, he had not reviewed any of the petitioners’ actual business records until the day before, upon his arrival in San Francisco. This prompted government counsel to move for dismissal of the petition for failure properly to prosecute pursuant to Rule 123 of the Tax Court Rules of Practice and Procedure.
 

 The court took the motion under advisement, and again instructed Mr. Cicero to continue. At that point, Mr. Cicero renewed his motion for a continuance on the ground that Mr. Priest, the CPA previously retained as petitioners’ expert, was unable to appear for health reasons. By leave of the court, Mr. Cicero left the courtroom to telephone petitioners and to instruct them to appear.
 

 During the already tortured course of the one-day trial, Mr. Cicero ultimately presented the testimony of Mr. Noli, who testified about his creation of the business structure and the operation of the chiropractic business during the tax years in question.
 

 After a lunch break, Mr. Priest, apparently having resurrected sufficient vigor to appear in court, testified as to the difficulties he had in deciphering depreciation tables while working on a possible settlement of the case and in obtaining business records of the Nolis from a prior accountant retained by them. In response to the court’s inquiries concerning the purpose of Mr. Priest’s testimony, counsel explained that he wished to illustrate the need for continuance. Mr. Noli then returned to the stand for more direct examination.
 

 During the government’s cross-examination of Mr. Noli, petitioners’ counsel objected to any further proceedings, announcing that bankruptcy petitions had been filed, triggering the automatic stay of the Tax Court trial pursuant to 11 U.S.C. § 362(a)(8). A recess was ordered during which government counsel moved the bankruptcy court for relief from the automatic stay so that the Tax Court proceedings could continue. The bankruptcy court determined that the bankruptcy petitions were filed as an indirect method of avoiding a decision in the Tax Court and orally granted the government’s request to lift the stay, deeming it “appropriate ... to allow those Tax Court proceedings to conclude.”
 

 With the stay lifted, the parties returned to the Tax Court. At the conclusion of the
 
 *1525
 
 taxpayers’ case, the Tax Court rendered a bench opinion granting the Commissioner’s motions to dismiss and assessing stipulated deficiencies against petitioners.
 

 III.
 

 On appeal, petitioners advance several arguments concerning the legal propriety of the Tax Court trial proceedings, including the rendering of an opinion, based on the bankruptcy court’s order granting the Commissioner relief from the automatic stay. They also contend the Tax Court erred in dismissing their petition, and in failing to recuse itself due to alleged bias and prejudice against petitioners.
 

 IV.
 

 Petitioners’ arguments concerning the legal propriety of the Tax Court trial proceedings are devoid of merit. First, they argue that the bankruptcy court’s oral order granting relief from the automatic stay was neither properly rendered nor docketed by the bankruptcy court. Thus, they contend no valid judgment existed which would allow the Tax Court to continue the trial proceedings.
 

 This argument misperceives both the purpose of Fed.R.Civ.P. 58, and the binding effect of an order notwithstanding the issuing court’s failure to enter it on the docket. The “separate document” requirement of Rule 58 was intended primarily to clear up uncertainties in determining, for purposes of appellate review, when there is a final appealable judgment.
 
 See Bankers Trust Co. v. Mollis,
 
 435 U.S. 381, 384, 98 S.Ct. 1117, 1120, 55 L.Ed.2d 357 (1978) (The “sole purpose” of the separate document requirement is “to clarify when the time for appeal ... begins to run”). Similarly, the bankruptcy court’s order lifting the stay was effective and binding upon the parties. The petitioners make no claim, nor could they, that they were prejudiced by the bankruptcy court’s failure to enter a separate judgment.
 
 See, e.g., Harris v. McCarthy,
 
 790 F.2d 753, 757 (9th Cir.1986). They were present when the oral order was issued and clearly had notice of its existence and content. Moreover, petitioners understood and accepted the order as final for purposes of appeal. They filed a timely appeal from that order and the reason for application of Rule 58 is simply not applicable here.
 
 [1]
 

 Petitioners argue that even if the oral order was valid, the rendition of a bench opinion at the conclusion of the trial on May 7, 1987 was outside the limited relief from the automatic stay granted by the bankruptcy court. We reject this argument.
 

 The automatic stay under 11 U.S.C. § 362(a) operates, until further order of the bankruptcy court, as an absolute bar to the commencement or continuation of a proceeding concerning the debtor before the United States Tax Court. 11 U.S.C. § 362(a)(8). The automatic stay, however, is not incontestable, and a party in interest may request relief from the stay under 11 U.S.C. § 362(d). Section 362(f) empowers the bankruptcy court to grant
 
 ex parte
 
 relief from the stay in exceptional circumstances.
 

 Because the automatic stay freezes in place a Tax Court proceeding, and “because only an order of the bankruptcy court can authorize any further progress in the stayed proceedings, it follows that the continuation of ... [the Tax Court] proceeding can derive legitimacy only from the bankruptcy court order.”
 
 Casperone v. Landmark Oil & Gas Corp.,
 
 819 F.2d 112, 114 (5th Cir.1987). For these reasons, the terms of an order lifting the automatic stay are strictly construed.
 
 Id.
 

 Here, the bankruptcy court’s oral order by its terms did not prohibit the Tax Court from reaching a decision while proceeding on the merits of the tax case; rather it stated:
 

 [T]his tax claim would have to be determined in any instance in the bankruptcy
 
 *1526
 
 case. This court has discretion as to how to have that claim determined. This court need not determine the claim itself. It can lift the stay and allow the Tax Court to try the case, and I think whether this is on the day of filing or well into the case, if the Tax Court proceedings have begun, it is appropriate to lift the stay to allow those Tax Court proceedings to conclude.
 

 In this regard, the Tax Court is statutorily empowered to issue bench opinions as a part of its trial function. 26 U.S.C. § 7459(b).
 

 The bankruptcy court’s intent not to inhibit that function becomes even more apparent from a review of the transcript of the
 
 ex parte
 
 motion for relief.
 
 [2]
 

 See, e.g., In re McAuley,
 
 66 B.R. 696, 702 (Bankr. 9th Cir. 1986) (Bankruptcy court’s intent regarding relief from automatic stay was obvious from order itself, as well as from review of transcript of hearing). The bankruptcy judge’s only concern in lifting the stay was to keep the government from engaging in collection activity, and, contrary to petitioners’ assertions, he seemed altogether willing to permit the Tax Court to determine their tax liability, not merely to conclude the taking of testimony.
 

 There would be scant reason, indeed, for the bankruptcy court to allow the Tax Court proceedings to conclude, but yet prohibit a judgment from being rendered. Petitioners have cited neither authority nor rationale for such an anomaly.
 
 See generally Matter of Holtkamp,
 
 669 F.2d 505 (7th Cir.1982). Lifting of the stay to allow the parties to determine the amount of tax liability would not affect the estate. It would only establish the amount of a claim which already had been made against the estate. In this respect, relief from the stay allowing for rendition of a judgment would not violate the underlying purposes of the Bankruptcy Code. Because the Tax Court’s bench opinion did not exceed the bounds permitted by order of the bankruptcy court, we find no error.
 
 [3]
 

 V.
 

 Petitioners similarly assail the merits of the Tax Court’s decision dismissing their petition for failure properly to prosecute, Tax Court Rule 123(b), or in the alternative, for failure to produce evidence on an issue as to which they had the burden of proof. Tax Court Rule 149(b). Notwithstanding the Tax Court’s alternative basis, we find that dismissal was warranted pursuant to Rule 123(b).
 
 [4]
 

 
 *1527
 
 We review the Tax Court’s decision to dismiss a case for lack of prosecution for an abuse of discretion.
 
 Edelson v. Commissioner,
 
 829 F.2d 828, 831 (9th Cir.1987).
 

 Rule 123(b) of the Tax Court Rules of Practice and Procedure, 26 U.S.C.A. foil. § 7453 (West Supp.1988), provides: “For failure of a petitioner properly to prosecute ... or for other cause which the Court deems sufficient, the Court may dismiss a case at any time and enter a decision against the petitioner.” While the Tax Court must explore meaningful alternatives prior to dismissing a case, “it need not always exhaust every sanction short of dismissal before final action.”
 
 Edelson,
 
 829 F.2d at 831.
 

 Even though dismissal for failure properly to prosecute will normally arise where a party fails to appear at trial,
 
 see, e.g., Edel-son,
 
 we have previously affirmed dismissal of a case involving an appearing petitioner under the former Rules.
 
 See Montgomery v. Commissioner,
 
 367 F.2d 917 (9th Cir.1966).
 

 Dismissal is a harsh remedy, but we think it was entirely justified by the facts of this case.
 
 [5]
 
 It is abundantly clear that petitioners embarked on a five-year campaign to delay the adjudication and assessment of tax liabilities that accrued as early as 1974. For the most part, these dilatory tactics took the form of hiring new counsel and new CPA’s just before the scheduled trial dates and pleading for additional continuances due to their attorneys’ and experts’ unfamiliarity with the case. Once trial became inevitable, petitioners attempted to stall proceedings by seeking continuances for a variety of asserted causes. When it became apparent that the court intended to see the case through to a conclusion, petitioners did nothing short of filing for bankruptcy on the day of trial, thereby invoking the automatic stay, to avoid further an already untimely resolution of their case. This made clear, if clarification was necessary at this point, petitioners’ intentions to forestall the court’s ruling on their tax liability.
 

 As Judge Learned Hand once wrote: “There must come a time when even at some risk of error, a court is justified in accepting as. conclusive a series of apparent subterfuges.”
 
 Katz v. Commissioner,
 
 188 F.2d 957, 959 (2d Cir.1951). Here, there was no error. The court’s decision to dismiss the petition because of taxpayers’ failure properly to prosecute was a proper exercise of its discretion.
 

 VI.
 

 Finally, petitioners argue at some length that the Tax Court’s dismissal of their petition was so impermissibly tainted with prejudice that the judge should have disqualified himself pursuant to 28 U.S.C. § 455. There is no merit to this argument.
 

 As the Commissioner points out, petitioners made no request for disqualification of the Tax Court judge. Failure to move for recusal at the trial level, however, does not preclude raising on appeal the issue of recusal under § 455.
 
 United States v. Sibla,
 
 624 F.2d 864, 868 (9th Cir.1980). “Nonetheless, if no motion is made to the judge ... a party will bear a greater burden on appeal in demonstrating that the judge ... [erred] in failing to grant recusal under section 455.”
 
 Sibla, id.
 

 Appellants have failed to carry that burden. “There is nothing inherently improper about a suggestion by a judge that a party should file a particular motion.”
 
 Gonzales v. Parks,
 
 830 F.2d 1033, 1037 (9th Cir.1987). Similarly, a judge is not delinquent for expressing doubt on the merits of a particular case.
 
 See United States v. Frias-Ramirez,
 
 670 F.2d 849, 853 n. 6 (9th Cir.),
 
 cert. denied,
 
 459 U.S. 842, 103 S.Ct. 94, 74 L.Ed.2d 86 (1982) (“Parties cannot attack a judge’s impartiality on the basis of information and beliefs acquired while acting in his or her judicial capacity”). Furthermore, the comments made by
 
 *1528
 
 the judge do not demonstrate pervasive bias or prejudice. These statements, made after the court examined the pleadings and stipulations, simply reflect that the judge was appropriately upset with petitioners’ conduct aimed at further stalling the trial.
 
 See, e.g., United States v. Monaco,
 
 852 F.2d 1143, 1147 (9th Cir.1988) (comments by the judge reflected his outrage at the enormity of the crime that had taken place).
 

 The decision of the Tax Court is
 

 AFFIRMED.
 

 [1]
 

 . The bankruptcy court's order lifting the stay was subsequently affirmed by the District Court for the Northern District of California.
 
 See In re Delora I Crowley, aka Noli,
 
 No. C-87-5976-DLJ (N.D.Cal. April 13, 1988). Petitioners have not appealed this decision.
 

 [2]
 

 . In an exchange with the bankruptcy court, government counsel explained the circumstances warranting relief from the automatic stay:
 

 MR. WEILL: ... We requested [sic] that the automatic stay be lifted in the interests of justice and that this Tax Court case be finalized. As I understand it, there is only one witness left, one of the debtors, the taxpayers. The government has no witnesses; and that will allow Judge Swift to return back to Washington, D.C., from whence he came. So, I would request that the automatic stay be lifted for the sole purpose of allowing this Tax Court trial to come to a resolution.
 

 THE COURT: The stay wouldn’t be lifted for collection purposes?
 

 MR. WEILL: No. Absolutely not. Just for purposes of completing this trial, which they began, and put on their own witnesses this morning.
 

 THE COURT: Okay. May I hear from debtors’ counsel?
 

 [3]
 

 . Contrary to the Commissioner’s assertions, taxpayers’ appeal of the efficacy and scope of the bankruptcy court’s order lifting the stay is not rendered moot by taxpayers’ failure to have sought an emergency stay of the order pending appeal. “Bankruptcy’s mootness rule applies when an appellant has failed to obtain a stay from an order that permits a sale of a debtor’s assets.”
 
 In re Onouli-Kona Land Co.,
 
 846 F.2d 1170, 1171 (9th Cir.1988). The primary purpose of the mootness rule " ‘is to protect the interest of a good faith purchaser ... of the property,’ thereby assuring finality of sales."
 
 Id.
 
 at 1172 (quoting
 
 In re Suchy,
 
 786 F.2d 900, 902 (9th Cir. 1985)).
 
 See, e.g., Algeran, Inc. v. Advance Ross Corp.,
 
 759 F.2d 1421, 1423-24 (9th Cir.1985) (sale of stock);
 
 Suchy,
 
 786 F.2d at 902 (sale of house);
 
 Onouli-Kona,
 
 846 F.2d at 1173 (sale of real property);
 
 In re Roberts Farms, Inc.,
 
 652 F.2d 793, 798 (9th Cir.1981) (same);
 
 In re Royal Properties, Inc.,
 
 621 F.2d 984, 986-87 (9th Cir.1980) (same);
 
 In re Combined Metals Reduction Co.,
 
 557 F.2d 179, 187 (9th Cir.1977) (same). Here, the lifting of the automatic stay enabled only the Tax Court proceedings to continue. The mootness rule is thus inapplicable in this context.
 

 [4]
 

 .While we decline to address it, the Tax Court’s alternative rationale for dismissing the petition for failure to produce evidence on issues as to which taxpayers had the burden of proof finds substantial support in the record.
 

 [5]
 

 . We note, however, that any perceived harshness was substantially alleviated by reason of the commendable, although seemingly unwarranted, opportunity given petitioners to state their case for redetermination of the deficiencies.