T.C. Memo. 2002-91


UNITED STATES TAX COURT


HOLLY RUOCCO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5561-01.                    Filed April 5, 2002.


Holly Ruocco, pro se.

<u>Charles B. Burnett</u>, for respondent.


MEMORANDUM OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies of $69,576
and $140,594 in petitioner's Federal income taxes for 1996 and
1997, respectively.  Respondent also determined that petitioner
is liable for a penalty of $13,915 under section 6662 for 1996
and an addition to tax of $35,148 under section 6651(a)(1) for
1997.  Petitioner declined to present any evidence at trial, and

respondent filed a Motion to Dismiss for Failure to Properly Prosecute and for a Penalty Under I.R.C. Section 6673 (motion to dismiss).  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

Respondent's determinations at issue in this case are set forth in two separate statutory notices of deficiency, both dated January 26, 2001.  The notice for 1996 was addressed to Kyle W. Storks (Storks) and Holly L. Ruocco (petitioner).  The deficiency resulted primarily from an increase in income on Schedule C, Profit or Loss From Business, for Canyon State Chiropractic that was explained in the notice for 1996 as follows:

> 1.B   SCH C–CANYON STATE
> During the taxable period ended December 31, 1996, income earned by you was incorrectly reported by Canyon State Chiropractic and other entities.  It is determined that this income from services performed by you in connection with Canyon State Chiropractic and other entities is taxable to you.  See enclosed audit report.  Taxable income for the taxable period ended December 31, 1996 is increased $217,209.00.

The attached audit report showed:  (1) The unreported gross receipts or sales of Canyon State Chiropractic for 1996 were determined as the deposits into three bank accounts less the amounts reported on the return as filed and (2) a total of

$100,195 in deductions claimed on the Canyon State Chiropractic return was disallowed.

The notice of deficiency for 1997 was addressed only to petitioner. It explained the primary adjustment as follows:

> 1A. SCH C-CANYON STATE
> It is determined that you received income or other distributions from your chiropractic business in the amount of $375,400 for the taxable period ended December 31, 1997. This amount is taxable to you because you have not established that the income is excluded from gross receipts under the provisions of the Internal Revenue Code. In the absence of adequate records, this income has been determined on the basis of available information and by analyzing bank deposits.

The addition to tax was based on petitioner's failure to file a tax return for 1997.

At the time that she filed the petition, petitioner resided in Salem, New Hampshire. In the petition, petitioner claimed that the determinations in the notices of deficiency were based on "Error in attributing income to the petitioner that she did not receive." Petitioner also alleged that she "did not receive any of the income alleged in the Notices of Deficiency from a taxable source." Petitioner designated Phoenix, Arizona, as the place of trial of this case.

By notice served August 24, 2001, the case was set for trial in Phoenix on January 28, 2002. Attached to the notice of trial was a Standing Pre-Trial Order that provided, among other things:

ORDERED that all facts shall be stipulated to the maximum extent possible. All documentary and written evidence shall be marked and stipulated in accordance with Rule 91(b), unless the evidence is to be used to impeach the credibility of a witness. Objections may be preserved in the stipulation. If a complete stipulation of facts is not ready for submission at trial, and if the Court determines that this is the result of either party's failure to fully cooperate in the preparation thereof, the Court may order sanctions against the uncooperative party. Any documents or materials which a party expects to utilize in the event of trial (except for impeachment), but which are not stipulated, shall be identified in writing and exchanged by the parties at least 15 days before the first day of the trial session. The Court may refuse to receive in evidence any document or material not so stipulated or exchanged, unless otherwise agreed by the parties or allowed by the Court for good cause shown.
* * *

On November 27, 2001, respondent's counsel sent a letter to petitioner seeking informal exchange of documents, expressing the Government's position, and advising petitioner as follows:

Enclosed are copies of some materials for your review. Notice 97-24 and the opinion in the case George v. Commissioner, T.C. Memo. 1999-381, both describe the government's position in cases involving trusts similar to yours. I am also enclosing copies of the following additional cases: Universal Trust 06-15-90 v. Commissioner, T.C. Memo. 2000-390; Lipari v. Commissioner, T.C. Memo. 2000-280; and Johnston v. Commissioner, T.C. Memo. 2000-315. You will note that the Tax Court has taken a very dim view of Mr. Chisum and his clients for the positions they have taken.

* * * * * * *

As you have not met with Service during the examination and consideration by the Appeals Office, this matter has not been developed and your position on the issues in this case is not known. It is not possible for either of us to prepare adequately for trial. This wastes our time and the court's time and

resources.  As I mentioned to you on the telephone, if your claims prove to be frivolous, you should be aware of I.R.C. section 6673, which provides:

> (a)(1) Procedures instituted primarily for delay, etc.--Whenever it appears to the Tax Court that--
>
> (1)(A) proceedings before it have been instituted or maintained by the taxpayer <u>primarily for delay</u>,
>
> (1)(B) the taxpayer's position in such proceeding is frivolous or groundless, or
>
> (1)(C) the taxpayer unreasonably failed to pursue available administrative remedies,
>
> <u>the Tax Court, in its decision, may require the taxpayer to pay to the United States a penalty not in excess of $25,000</u>.

(Emphasis added.)  We routinely pursue sanctions under this section in cases of non-cooperation, and we may do so in your case as well.

(A copy of that letter was attached to respondent's pending motion to dismiss.)

On December 17, 2001, respondent filed a Motion to Show Cause Why Proposed Facts in Evidence Should not be Accepted as Established (motion to show cause).  Attached to respondent's motion to show cause was a proposed stipulation that, among other things, set forth facts for 1996 and 1997 that included the following:  Petitioner was married to Storks; petitioner and Storks resided in Arizona; and petitioner was licensed as a chiropractor by the State of Arizona.  Prior to 1996, petitioner practiced her profession at Canyon State Chiropractic.  Prior to

1996, Canyon State Chiropractic was operated as a sole proprietorship. Canyon State Chiropractic LLC was created on or about August 14, 1996. Canyon State Chiropractic LLC had three named members: Storks, petitioner, and Taurus Enterprises. Storks and petitioner continued to control the business operations of Canyon State Chiropractic after the creation of the LLC.

The proposed stipulation stated that petitioner filed a joint Form 1040, U.S. Individual Income Tax Return, with Storks for 1996 but did not file an income tax return for 1997. A copy of a Form 1065, U.S. Partnership Return of Income, filed by Canyon State Chiropractic LLC for 1996 and a Notice of Final Partnership Administrative Adjustment (FPAA) sent to the partnership for 1996 were attached to the proposed stipulation. The proposed stipulation also stated that there was no petition filed with the Tax Court in response to the FPAA, Canyon State Chiropractic LLC did not file a return for 1997, and Taurus Enterprises did not file any tax returns for 1996 or 1997. Finally, copies of various records of the bank accounts that were used by respondent in determining petitioner's gross receipts for 1996 and 1997 were attached to the proposed stipulation. Among the records were bank statements, addressed to Canyon State Chiropractic Clinic, petitioner, and Storks, and signature cards for two of the three bank accounts. One of the signature cards

bore the signature of petitioner and another bore the signature of J.C. Chisum.

On December 18, 2001, the Court's Order to Show Cause Under Rule 91(f) was issued, and petitioner was directed to show cause, on or before January 10, 2002, why the facts set forth in respondent's motion paper should not be accepted as established for purposes of the pending case.  The Order further stated:

> If no response is filed within the period specified
> above with respect to any matter or portion thereof, or
> if the response is evasive or not fairly directed to
> the proposed stipulation or portion thereof, that
> matter or portion thereof will be deemed stipulated for
> purposes of the pending case, and an order will be
> entered accordingly, pursuant to Rule 91(f)(3).

On January 14, 2002, the Court received from petitioner a Motion for a Date and Time Set Certain for Trial, dated January 10, 2002.  On January 15, 2002, the Court instituted a conference telephone call with the parties.  The Court explained that petitioner's motion for a date and time certain for trial could not be granted because it conflicted with a trial previously set.  The Court also advised petitioner that her response to the order to show cause had not been received.  The nature of petitioner's response, which apparently had been mailed but not delivered to the Court, was described.  Petitioner's response (a copy of which was attached to respondent's motion to dismiss) was not fairly directed to the proposed stipulation or any portion thereof but raised frivolous legal objections and

asserted that the Tax Court rule regarding stipulation "runs afoul of the Fifth Amendment." During the conference telephone call with the parties, the Court advised petitioner that she faced several problems in this case, including the necessity of showing that the bank deposits in issue were not payment for her services and that income received by the chiropractic clinic should be treated as community property. The Court further advised her that business deductions to which she might be entitled had not been allowed and that penalties were likely to be imposed because this case appeared to be similar to other recent cases involving similar facts. Petitioner insisted that respondent had the burden of proof. The Court indicated that respondent could satisfy his burden by introducing the bank records into evidence. Petitioner stated that the records relating to the deductions were in storage. The Court suggested that, if petitioner made a good faith attempt to secure the records and to abandon the meritless arguments previously made by her, then, and only then, the Court would consider a continuance of the case. Petitioner stated that she would contact respondent's counsel concerning the matters discussed.

After the conference telephone call, the Court's order to show cause was made absolute. On January 18, 2002, the Court received from petitioner a Motion to Continue, in which petitioner repeated her erroneous legal arguments. In addition,

petitioner asserted that the Court had incorrectly concluded who has the burden of proof in this case and complained that the Court's comments during the conference telephone call were indicative of bias and incompetence.[1]  The Motion to Continue was denied.  (There is no explanation in the record why the documents that petitioner wishes the Court to have, such as the Motion for a Date and Time Set Certain for Trial and the Motion to Continue, are timely delivered to the Court, while other documents, such as petitioner's trial memorandum and her response to the order to show cause, are delayed due to problems with receipt of the Court's mail.)

On January 25, 2002, petitioner's Motion to Recuse was filed.  Petitioner also filed a Motion in Limine seeking to preclude respondent's attributing income to petitioner either from the limited liability company or from a trust that respondent characterized as sham or as a grantor trust.

---

[1]Substantially identical motions to recuse based on this conference telephone call were filed in other cases on the Phoenix calendar; in the same cases, other substantially identical documents had repeatedly been filed.  Those cases include Broderick v. Commissioner, docket Nos. 432-00 and 2070-01; Burke v. Commissioner, docket No. 13410-00; Cahill v. Commissioner, docket No. 303-01; Frentheway v. Commissioner, docket No. 8041-00; Lehmann v. Commissioner, docket No. 1008-01. All of these cases appear to involve trusts of the sort that have been consistently held ineffective to avoid tax on services rendered by taxpayers.  See, e.g., Johnston v. Commissioner, T.C. Memo. 2000-315 n.2; Lipari v. Commissioner, T.C. Memo. 2000-280; George v. Commissioner, T.C. Memo. 1999-381.

Petitioner also filed a Motion to Dismiss and a motion to reconsider the Court's order to show cause.  In her various motions and in her trial memorandum, petitioner contends that respondent has the burden of proving unreported income, that certain issues are not properly before the Court, and that the Court's stated position on burden of proof is so erroneous as to show bias and prejudice.  Petitioner's motions were denied.

When the case was called for trial, respondent's counsel acknowledged that, after the conference telephone call, he had received a list of checks for 1996 that purportedly supported deductions claimed by petitioner.  The list, a copy of which is attached to respondent's motion to dismiss, includes payments for things such as student loans, a wedding present, and aquarium supplies that are patently personal and not deductible.  Because petitioner was not prepared to proceed to trial, the Court stated that she would be held in default but that she could move to set aside the default in 30 days upon making an offer of proof. Repeating her position that the Government has the burden of proof, petitioner requested that the trial proceed.  The case was set for trial on January 30, 2002.

At the time of trial, respondent's motion to dismiss was filed, and respondent reported that no progress had been made with respect to potential deductions.  Petitioner restated her position that "the Government has the burden of proof

notwithstanding the Court's previous statement." Respondent's counsel stated that he was not relying on any alternative theories and would proceed on the assignment of income theory reflected in the notices of deficiency. In response to the Court's inquiry, respondent declined to make any concession based on community property income because "it's not uncommon in this state for professionals to have some arrangement with respect to community property." Petitioner declined to present evidence, after being advised again by the Court that the stipulated bank records satisfied the Government's burden. Petitioner declined to testify or to identify the person advising her on the erroneous legalistic arguments set forth in her filings, citing the Fifth Amendment. Petitioner did, however, identify her 1996 and 1997 renewal applications for her license with the Arizona State Board of Chiropractic Examiners, which reflected her office address as Canyon State Chiropractic.

Respondent's motion to dismiss was taken under advisement, and petitioner was advised that, while the Court was awaiting the transcripts to be used in preparing this opinion, she might respond to the motion, make an offer of proof, and present records dealing with deductions to respondent's counsel. Nothing has been received from petitioner indicating that she has abandoned her erroneous and frivolous positions in this case.

## Discussion

Petitioner contends that the Court's statements in the conference telephone call concerning burden of proof indicate bias in favor of respondent and prejudice against petitioner. She apparently draws this inference because the Court's statements coincided with statements made by respondent in letters that were sent to petitioner by respondent during the course of trial preparation. Those letters were not seen by the Court until respondent's motion to dismiss was filed. Both respondent's letters and the Court's statement were based on well established law and are thus not grounds for recusal. See, e.g., Noli v. Commissioner, 860 F.2d 1521 (9th Cir. 1988); United States v. Cowden, 545 F.2d 257, 265 (1st Cir. 1976); Rowlee v. Commissioner, 80 T.C. 1111, 1117, and cases cited in n.4 (1983).

Petitioner's unrelenting view of the burden of proof in this case has no merit. That contention made in indistinguishable circumstances was thoroughly discussed in Johnston v. Commissioner, T.C. Memo. 2000-315, cited in respondent's November 2001 letter to petitioner, as follows:

> it is * * * clear that the Commissioner may satisfy the predicate evidence requirement in unreported income cases by introducing evidence linking the taxpayer to tax-generating acts. See Shriver v. Commissioner, 85 T.C. 1, 4 (1985). Alternatively, respondent may satisfy the predicate evidence requirement by showing the taxpayer was connected to unexplained bank deposits or cash. See Schad v. Commissioner, 87 T.C. 609, 618-

620 (1986) (discussing Court of Appeals for the Ninth
Circuit authorities); <u>Tokarski v. Commissioner</u>, 87 T.C.
74 (1986).  [Fn. ref. omitted.]

The record contains ample evidence linking
petitioner both to tax-generating acts and to bank
deposits of the income generated by those acts.  * * *

Once respondent has shown evidence of gross receipts, even in the
criminal or civil fraud context, petitioner has the burden of
showing offsets or deductions reducing the taxable income.  See,
e.g., <u>United States v. Shavin</u>, 320 F.2d 308, 310-311 (7th Cir.
1963); <u>Elwert v. United States</u>, 231 F.2d 928, 933-936 (9th Cir.
1956); <u>Brooks v. Commissioner</u>, 82 T.C. 413, 433 (1984), affd.
without published opinion 772 F.2d 910 (9th Cir. 1985).
Petitioner's obligation with respect to deductions is
indisputable.  See <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84
(1992); <u>Rockwell v. Commissioner</u>, 512 F.2d 882 (9th Cir. 1975),
affg. T.C. Memo. 1972-133.  She presented no credible evidence on
any issue of fact.  See sec. 7491(a).  The stipulated facts
satisfy respondent's burden of production with respect to the
penalties.  See sec. 7491(c); <u>Higbee v. Commissioner</u>, 116 T.C.
438, 446-449 (2001).

Petitioner's Motion to Recuse, as well as the various other
motions filed shortly before or at the calendar call, were
patently designed to delay and obstruct the determination of
petitioner's correct tax liability.  The thrust of some of

petitioner's motions is that the Internal Revenue Service (IRS) would be required to proceed against either a trust or a limited liability company rather than proceeding against petitioner directly. The notices of deficiency, however, determined that the deposits into specific bank accounts were income for services performed by petitioner. Petitioner raised the entity theory, and respondent's arguments that the entities should be disregarded as sham or that the trust was, in the alternative, a grantor trust were raised in defense of petitioner's arguments. In any event, the IRS may proceed on alternative theories and alternative notices in the circumstances indicated by the record in this case. See Clapp v. Commissioner, 875 F.2d 1396, 1402 (9th Cir. 1989); Criss v. Commissioner, T.C. Memo. 2002-62; Universal Trust 06-15-90 v. Commissioner, T.C. Memo. 2000-390.

The stipulation proposed by respondent, the motion for order to show cause under Rule 91, the order to show cause, and the order deeming facts stipulated for purposes of this case were all consistent with Rule 91. The statements made in the stipulation and the documents attached to it were all matters "which fairly should not be in dispute." See Rule 91(a). Petitioner did not raise at any time a dispute as to the factual accuracy of the stipulation. Her objections related solely to her erroneous

theory about respondent's burden of proof and her Fifth Amendment privilege.

Petitioner's assertion that the other party has the burden of proof is not a sufficient objection to a proposed stipulation. Rule 91(a) specifically states that "The requirement of stipulation applies under this Rule without regard to where the burden of proof may lie with respect to the matters involved." See, e.g., Console v. Commissioner, T.C. Memo. 2001-232.

Petitioner's argument that Rule 91(f) could not be applied without violating her Fifth Amendment privilege must be rejected. The phrase that comes readily to mind was first used by the U.S. Supreme Court in United States v. Sullivan, 274 U.S. 259, 264 (1927), to wit, a taxpayer may not "draw a conjurer's circle around the whole matter" of his or her tax liability. See also Steinbrecher v. Commissioner, 712 F.2d 195, 198 (5th Cir. 1983), affg. T.C. Memo. 1983-12; McCoy v. Commissioner, 696 F.2d 1234 (9th Cir. 1983), affg. 76 T.C. 1027 (1981); Edwards v. Commissioner, 680 F.2d 1268 (9th Cir. 1982), affg. an unreported decision of this Court; United States v. Carlson, 617 F.2d 518, 523 (9th Cir. 1980). In a civil tax case, the taxpayer must accept the consequences of asserting the Fifth Amendment and cannot avoid the burden of proof by claiming the privilege and attempting to convert "the shield * * * which it was intended to

be into a sword". <u>United States v. Rylander</u>, 460 U.S. 752, 758 (1983); see <u>Steinbrecher v. Commissioner</u>, <u>supra</u>; <u>Traficant v. Commissioner</u>, 89 T.C. 501 (1987), affd. 884 F.2d 258 (6th Cir. 1989).

The matters deemed stipulated in this case, in addition to satisfying respondent's burden of presenting predicate evidence connecting petitioner to the income determined by respondent, lead us to conclude that the income in question was community property, only half of which is taxable to petitioner. The stipulated facts and exhibits establish that the amounts deposited went into accounts controlled by petitioner and her former husband, both of whom were performing services for Canyon State Chiropractic. Whether the services were performed by petitioner or by her former husband, payments received for those services constituted community property. See Ariz. Rev. Stat. sec. 25-211 (2000). Although respondent's counsel speculated that there might be an agreement between the parties with respect to community income, such agreement would be unlikely to allocate all of the income to petitioner. We conclude, therefore, that the decision to be entered in this case should reflect recomputation of petitioner's tax liability based on attributing to her one-half of the bank deposits originally determined to be

income to her.  See <u>United States v. Mitchell</u>, 403 U.S. 190 (1971); <u>Shea v. Commissioner</u>, 112 T.C. 183, 193 (1999).

Rule 123 provides:

(a) Default:  If any party has failed to plead or otherwise proceed as provided by these Rules or as required by the Court, then such party may be held in default by the Court either on motion of another party or on the initiative of the Court.  Thereafter, the Court may enter a decision against the defaulting party upon such terms and conditions as the Court may deem proper, or may impose such sanctions (see, e.g., Rule 104) as the Court may deem appropriate.  The Court may, in its discretion, conduct hearings to ascertain whether a default has been committed, to determine the decision to be entered or the sanctions to be imposed, or to ascertain the truth of any matter.

(b) Dismissal:  For failure of a petitioner properly to prosecute or to comply with these Rules or any order of the Court or for other cause which the Court deems sufficient, the Court may dismiss a case at any time and enter a decision against the petitioner. The Court may, for similar reasons, decide against any party any issue as to which such party has the burden of proof, and such decision shall be treated as a dismissal for purposes of paragraphs (c) and (d) of this Rule.

(c) Setting Aside Default or Dismissal:  For reasons deemed sufficient by the Court and upon motion expeditiously made, the Court may set aside a default or dismissal or the decision rendered thereon.

(d) Effect of Decision on Default or Dismissal:  A decision rendered upon a default or in consequence of a dismissal, other than a dismissal for lack of jurisdiction, shall operate as an adjudication on the merits.

See also Rule 149(b).  We conclude that respondent's motion to dismiss should be granted.  However, the decision to be entered

will reflect recomputation of the deficiencies to reduce the unreported income attributed to petitioner in accordance with this opinion.

Even though petitioner's tax liability will be reduced from that determined in the notices of deficiency, we conclude that a penalty under section 6673 should be imposed.  The reduction in petitioner's tax liability is not based on any evidence produced or arguments made by petitioner.  The arguments made by petitioner have long been discredited and were asserted only for purposes of delay.  Petitioner was warned in correspondence from respondent's counsel and in the conference telephone call with the Court prior to trial that her arguments lacked merit and had been the basis for sanctions in prior cases.  She nonetheless persisted in making them and failed to take advantage of opportunities provided to her to establish her correct tax liability.  Based on the record in this case, a penalty is appropriate in the amount of $12,500.  See <u>Lipari v. Commissioner</u>, T.C. Memo. 2000-280.

To reflect the foregoing,

<u>An appropriate Order</u>

<u>will be issued</u>.