**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In the Matter of: JOHN HARVEY
WARDROBE; THERESA ROSE
WARDROBE,

                  *Debtors,*

SUSAN GRIFFIN,

                  *Appellant,*

    v.

JOHN HARVEY WARDROBE; THERESA
ROSE WARDROBE

                  *Appellees.*

No. 07-16635

BAP No.
NV-06-01451-DES

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Dunn, Efremsky and Smith, Bankruptcy Judges, Presiding

Argued and Submitted
February 13, 2009—San Francisco, California

Filed March 16, 2009

Before: Alfred T. Goodwin, Mary M. Schroeder and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Goodwin

## COUNSEL

John Bartlett, Carson City, Nevada, for the appellant.

J. Craig Demetras, Demetras & O'Neil, Reno, Nevada, for the appellee.

**OPINION**

GOODWIN, Circuit Judge:

Susan Griffin sued John Wardrobe, a building contractor, and his bonding companies, for breach of contract after a disappointing home repair job. Three days before the trial was to begin in the Nevada state court, the contractor filed for Chapter 13 bankruptcy, which was converted to Chapter 7, and obtained the statutory automatic stay of the litigation pending in state court.

Griffin then filed a motion in the bankruptcy court for a limited lifting of the stay to permit her to proceed against the bonding companies, using the defendant contractor as a witness. She attached a copy of her state court complaint to her motion. The complaint alleged only a damages claim for breach of contract and costs and attorney fees. The motion stated that Griffin would not attempt to recover on the judgment (against Wardrobe) without further order of the bankruptcy court.

The bankruptcy court granted the motion in an order stating that "the stay is lifted so that the Creditor may seek to compel the debtor, John Wardrobe, to participate in this trial as a witness and obtain judgment. However, Creditor may not proceed to enforce that judgment against the Debtor, or property of the estate without further order of this court." Approximately a month later, Griffin filed an unopposed motion in the bankruptcy court to extend the bar date to object to dischargeability of debt until "thirty days after there has been a notice of entry of judgment in the state court civil suit which is pending between the parties." The motion stated "Ms. Griffin believes her debt is non-dischargeable under 11 U.S.C. § 523(a)(2), (4) and (6)." The bankruptcy court granted the motion.

At that stage of the bankruptcy, a state-court judgment in the pending case would have been dischargeable. Wardrobe

thereafter received a discharge in bankruptcy and then became hard to find. Prior to the recommencement of the state court action, the attorney who had represented Wardrobe in state court applied for leave to withdraw as counsel. The motion was granted. Griffin settled with the insurance companies and dismissed her complaint as to them. The terms of that settlement are not revealed in the record.

The Nevada case proceeded to trial against Wardrobe, who, if served, failed to appear, and Griffin amended her complaint to allege intentional fraud. She obtained a default judgment for $192,314.54 for fraudulent misrepresentation and consequential damages, $24,377 for compensatory damages, $50,000 for punitive damages, costs and attorney fees.

Griffin then filed an adversary petition in the bankruptcy court, objecting to the discharge of the Nevada judgment pursuant to 11 U.S.C. § 523(a)(2)(A). Wardrobe filed an answer, and after a hearing on the matter, the bankruptcy judge determined that the state court judgment was entitled to preclusive effect and "that the elements necessary to establish a cause of action under 11 U.S.C. Section 523(a)(2)(A) have been established in this matter." The debt arising from the state court judgment, with the exception of the $50,000 punitive damages award, was found to be nondischargeable.

Wardrobe appealed to the Bankruptcy Appellate Panel (BAP), which reversed. The BAP held that the state court judgment "lack[ed] preclusive effect to establish the elements of a § 523(a)(2)(A) cause of action, with the possible exception of damages, because the bankruptcy court had lifted the stay only to allow the state court to decide the breach of contract claim in order, if appropriate, to enter an enforceable judgment against the bond insurers." The BAP reasoned that the order granting relief from the stay had to be interpreted in light of the relief Griffin requested in her relief from stay motion, and that although the order stated "that the automatic stay was lifted and that Griffin could proceed with her lawsuit

against Wardrobe and the bond insurers, the Relief from Stay Motion requested that the stay be lifted in order to obtain an enforceable judgment against the bond insurers only." The BAP cited *Thornburg v. Lynch (In re Thornburg)*, 277 B.R. 719, 726-27 (Bankr. E.D. Tex. 2002) for the proposition that "[t]he bankruptcy court could not, in the Relief from Stay Order, grant relief greater than what Griffin requested in the Relief from Stay Motion." Because the state court allowed Griffin to amend her complaint to include the claim for fraudulent misrepresentation, "the state court impermissibly modified the stay as to Wardrobe," resulting in a violation of the stay and leaving the findings "void and without preclusive effect." The BAP remanded to the bankruptcy court "to hear evidence and to make its own findings, as appropriate, on Griffin's § 523(a)(2)(A) cause of action against the debtors."

## DISCUSSION

**[1]** When a debtor files a bankruptcy petition, 11 U.S.C. § 362(a) imposes an automatic stay on proceedings against the debtor. We have explained that "[t]he automatic stay is self-executing" and "sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor . . . ." *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1081-82 (9th Cir. 2000) (en banc). The stay "gives the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and reorganization of his or her obligations." *MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715, 717 (9th Cir. 1985) (citation omitted). Further, "[b]y halting all collection efforts, the stay affords the debtor time to propose a reorganization plan, or simply 'to be relieved of the financial pressures that drove him into bankruptcy.' " *Gruntz*, 202 F.3d at 1081 (quoting S. Rep. No. 95-989, at 54-55 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840-41).

**[2]** In light of this broad sweep, actions, including judicial proceedings, "taken in violation of the automatic stay are

void." *Id*. at 1082 (citing *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992); *Phoenix Bond & Indemnity Co. v. Shamblin (In re Shamblin)*, 890 F.2d 123, 125 (9th Cir. 1989)). Although 28 U.S.C. § 1738 typically requires federal courts to give full faith and credit to state judicial proceedings, "[b]ecause . . . judicial proceedings in violation of the stay are void *ab initio*, the bankruptcy court is not obligated to extend full faith and credit to such judgments." *Id*. at n.6.

**[3]** A party may petition the bankruptcy court for relief from the automatic stay. 11 U.S.C. § 362(d). However, " 'because only an order of the bankruptcy court can authorize any further progress in the stayed proceedings, it follows that the continuation of the [stayed] proceeding can derive legitimacy only from the bankruptcy court order.' " *Gruntz*, 202 F.3d at 1082 (quoting *Noli v. Comm'r of Internal Revenue*, 860 F.2d 1521, 1525 (9th Cir. 1988)). Further, "the terms of an order lifting the automatic stay are strictly construed." *Noli*, 860 F.2d at 1525 (citing *Casperone v. Landmark Oil & Gas Corp.*, 819 F.2d 112, 114 (5th Cir. 1987)).

## A. Arguments on appeal

Griffin argues that the plain language of the bankruptcy court's order granting relief from the automatic stay clearly authorized her to proceed in the state court action to judgment against all parties, including Wardrobe. She contends that neither the motion for relief from the stay nor the order granting relief limited the claims available in the state court action, and that the motion to extend the bar date to object to dischargeability of debt placed Wardrobe on notice that she intended to pursue a judgment in state court that would be nondischargeable in bankruptcy.

Wardrobe argues that the fraud claim pursued in state court was beyond the scope of both the order granting relief from the automatic stay and the relief Griffin sought in the motion

for relief from the automatic stay, that the motion to extend the bar date to object to dischargeability of debt did not put Wardrobe on notice that Griffin would proceed with a fraud claim in state court, and that because Griffin obtained the fraud judgment in violation of the automatic stay, it is void and not entitled to preclusive effect. The essence of Wardrobe's argument is that the bankruptcy court's order, strictly construed, could not have authorized Griffin to pursue a claim against him in state court that was not alleged at the time she requested relief from the stay to pursue her state court claims.

**[4]** The parties have cited no case, and we have found none in this Circuit, dealing with the narrow question whether a limited relief from stay order can be expanded by a creditor to obtain a non-dischargeable judgment when the motion for the limited relief requested only permission to litigate the factual question of the damages caused by a breach of contract.

### B.  Orders Granting Relief From the Automatic Stay are Strictly Construed

The BAP decision is consistent with Ninth Circuit case law that orders granting relief from the automatic stay are to be strictly construed. *See Noli*, 860 F.2d at 1525. The BAP decision also discourages creditors from misrepresenting the actual or potential scope of the cause of action pending before a state court and thereby tends to ensure that the bankruptcy court is fully informed as to the potential effect of any order granting relief from the automatic stay. In this way, it furthers the purpose of the automatic stay.

Griffin's pursuit of her fraudulent misrepresentation claim in the Nevada court was outside of the scope of the bankruptcy court's order. As the BAP noted, Griffin's motion for relief from the automatic stay expressly stated that lifting the stay was necessary so that she could recover against Wardrobe's bonding companies and that "[t]he stay relief will only allow her to go to state court and proceed against [the bonding

companies]." In light of this statement in Griffin's motion for relief from stay, the BAP relied on *Thornburg* and held that "[t]he bankruptcy court could not, in the Relief from Stay Order, grant relief greater than what Griffin requested in the Relief from Stay Motion."

*Thornburg*, however, is not a perfect fit. Unlike the instant case, *Thornburg* involved the interpretation of an agreed order that the parties submitted to the bankruptcy court in response to a creditor's motion for relief from the automatic stay. *Thornburg*, 277 B.R. at 726. The motion for relief specifically requested the stay to be lifted to allow the creditor "to have a hearing in state court on her Motion for Enforcement." *Id.* The order granting relief "recite[d] simply that 'the automatic stay is lifted accordingly.' " *Id.* The bankruptcy court held that because "[a]n Agreed Order is a contract and its interpretation is governed by basic rules of contract construction . . . . [t]his court must find that the order on the motion for relief from the automatic stay granted the relief requested in the motion, no more no less . . . ." *Id.* at 726-27.

Furthermore, the BAP's holding may be potentially in tension with 11 U.S.C. § 105(a) ("The court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."). At least one bankruptcy court in this circuit has held that § 105(a), "when applied to section 362(d), compels the conclusion that a bankruptcy court can lift the automatic stay sua sponte." *Swift v. Bellucci (In re Bellucci)*, 119 B.R. 763, 779 (Bankr. E.D. Cal. 1990). Thus, *Thornburg* arguably does not fully support the BAP's holding that the bankruptcy court is limited to granting only the relief requested in the motion. However, while a bankruptcy court has equitable judicial

power, its power is confined by ordinary standards of notice and opportunity to be heard.

This court has employed in a limited relief from stay setting, an unpublished, but appropriate, rationale in *Nugent v. Am. Broad. Sys.*, 1 Fed. Appx. 633 (9th Cir. 2001). In *Nugent*, the creditors obtained a stay modification order that allowed their "district court litigation to 'proceed to final liquidation.' " *Nugent*, 1 Fed. Appx. at 635. When the bankruptcy court issued the order, the creditors' complaint pending in the district court sought only damages and an accounting of stock. *Id.* After the bankruptcy court granted the order, the creditors amended the complaint to include a constructive trust claim. *Id.* The court upheld "the bankruptcy court's conclusion that the automatic stay was modified only as to the claims that were actually pending in the district court litigation as of the date of the order modifying the stay." *Id.* The court noted that the creditors had "fail[ed] to explain how the bankruptcy court could lift the automatic stay as to the constructive trust claim when, at the time of its order, the bankruptcy court had no idea that the claim existed." *Id.* at 635-36. The rationale is substantially the same as the BAP's in our case, but does not purport to limit the discretion that 11 U.S.C. § 105(a) gives to the bankruptcy court to issue orders sua sponte.

**[5]** Adopting *Nugent*'s rationale here furthers the purpose underlying the automatic stay while providing sufficient protection to creditors. As noted, the stay protects both a debtor and his or her creditors by protecting the debtor's assets from collection efforts so that a repayment or reorganization plan can be developed. *See MacDonald*, 755 F.2d at 717. Allowing one creditor to amend a pending complaint after a relief from stay order has been issued undermines this protection and could threaten the debtor's reorganization or repayment plan. Limiting the relief available to a creditor to that which was currently alleged in a pending complaint or specifically requested in the motion for relief forces creditors to disclose the causes of action they intend to pursue and ensures that the

bankruptcy court is fully apprised of the nature of the lawsuit so that the court can determine whether cause exists to grant relief from the stay. *See* 11 U.S.C. § 362(d)(1) (providing that "the court shall grant relief from the stay . . . for cause"). This protects the debtor, and other creditors, from unforseen causes of action that could result in non-dischargeable judgments and furthers the purpose of the automatic stay.

Furthermore, in the event that a previously unforeseen cause of action becomes apparent during a trial proceeding pursuant to an order granting relief from the automatic stay, numerous avenues of relief are available to a creditor to ensure that any resulting judgment does not violate the scope of the order. A creditor could petition the bankruptcy court for relief that is broad enough to encompass the cause of action; could seek an order from the bankruptcy court clarifying the relief from stay order, *see Alonso v. Summerville (In re Summerville)*, 361 B.R. 133, 144 (9th Cir. B.A.P. 2007) (stating "[t]he bankruptcy court had jurisdiction to clarify its [relief from stay] order"); or, if a judgment has been entered on a cause of action that was not pending at the time the relief was granted, could seek retroactive relief from the stay that is broad enough to encompass the judgment, *see, e.g.*, *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 109 (9th Cir. 1995); *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 572 (9th Cir. 1992) (stating "section 362 gives the bankruptcy court wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay" (citation omitted)).

**[6]** Thus, because the reasoning of *Nugent* both furthers the purpose of the automatic stay and leaves creditors with sufficient procedural safeguards to ensure that any judgment that is rendered is either within the intended scope of the order granting relief from the stay or ratified by an order granting retroactive relief, we adopt it and hold that an order granting limited relief from an automatic stay to allow a creditor to proceed to judgment in a pending state court action is effec-

tive only as to those claims actually pending in the state court at the time the order modifying the stay issues, or that were expressly brought to the attention of the bankruptcy court during the relief from stay proceedings.

## CONCLUSION

For the foregoing reasons, we AFFIRM the BAP judgment.